[817 NYS2d 61]

Richard A. Williamson, as Successor Liquidating Trustee on Behalf of Lipper Convertibles, L.P., and Lipper Fixed Income Fund, L.P., Appellant, v PricewaterhouseCoopers LLP, Respondent.

First Department, June 22, 2006

### APPEARANCES OF COUNSEL

*Labaton, Sucharow & Rudoff LLP*, New York City (*Thomas A. Dubbs, Joseph Sternberg, Lisa Buckser-Schulz, Craig A. Martin, Barry Michael Okun* and *Andrew C. Levitt* of counsel), for appellant.

*Orrick, Herrington & Sutcliffe LLP*, New York City (*J. Peter Coll, Jr., Steven J. Fink, Sherene D. Hannon, Joshua M. Cutler* and *Thomas H. Godwin* of counsel), for respondent.

### OPINION OF THE COURT

SAXE, J.

This lawsuit arises out of the collapse of a hedge fund called Lipper Convertibles, L.P. (the Fund). After the Fund's portfolio manager, Edward Strafaci, unexpectedly resigned on January 14, 2002, the Fund conducted a review of its portfolio and discovered that Strafaci had used an improper method for valuing the portfolio's securities, materially overstating the value of Lipper Convertibles' securities holdings. As a result, the Fund, along with Lipper Fixed Income Fund, L.P., another hedge fund which had invested in Lipper Convertibles (collectively, the Partnerships), had over the years reported increasingly inflated assets, capital and profits. On February 20, 2002, after completing its reevaluation, the Fund announced to its limited partners that it had reduced its assessment of its net equity value by approximately $400 million (about 40%). On March 26, 2002, following the withdrawals of many limited partners' investments, it was decided that the Fund would have to liquidate its assets, and a proceeding to dissolve the Partnerships was commenced.

Plaintiff, the appointed liquidating trustee in the proceeding to wind up the Partnerships, commenced this action against defendant PricewaterhouseCoopers LLP (PwC), for damages he alleged were caused to the Fund by the firm's improper audits. Plaintiff alleged that the audits of the Fund were not conducted in accordance with generally accepted auditing standards, and

that PwC ignored blatant and material errors in the financial statements being audited, with respect to the valuation of the Fund's investments, which caused the Fund to report increasingly inflated assets, capital and profits in its statements year after year, with each year's misstatement relying on and building on the errors of the year before. It further alleged that PwC was aware of these errors, but failed to bring them to the attention of the Fund's management, instead falsely representing that the financial statements were prepared in accordance with generally accepted accounting principles (GAAP). Based upon these allegations, plaintiff asserted causes of action in malpractice, fraud, breach of fiduciary duty and breach of contract.

PwC moved to dismiss the complaint under CPLR 3211, on the ground, among other things, that plaintiff's claims of malpractice relating to the audits completed prior to 2000 were time-barred by the three-year statute of limitations (CPLR 214 [6]). In opposition, plaintiff asserted that each of PwC's audits was merely one step in a continuous and interrelated service that PwC provided from 1990 until it was discharged in 2002, warranting application of the continuous representation doctrine.

The IAS court agreed with PwC that plaintiff's claims for the period prior to 2000 were time-barred, reasoning that each annual engagement of PwC required only that it audit the Fund's financial statements of that single fiscal year, and that its yearly preparation of Schedules K-1, and any obligation to report internal control deficiencies, were incident to each specific annual audit. Beyond each year's discrete service by PwC the court saw merely the continuation of a general professional relationship, insufficient to toll the statute of limitations under the continuous representation doctrine.

For the reasons that follow we conclude that, rather than dismissing the claim in the CPLR 3211 context, the court should have given plaintiff the opportunity to develop through discovery, and to establish, the asserted fact that each audit was merely a step in a continuous and interrelated service that PwC provided through the years in question (*see Ackerman v Price Waterhouse*, 252 AD2d 179 [1998]).

While the mere recurrence of professional services does not alone constitute continuous representation where the later services performed were not related to the original services (*Hall & Co. v Steiner & Mondore*, 147 AD2d 225, 228-229 [1989]), it is important to examine the relation between the earlier and

later services, to determine whether facts supporting application of the continuous representation doctrine are demonstrated (*see Fred Smith Plumbing & Heating Co. v Christensen,* 242 AD2d 429 [1997]; *Zaref v Berk & Michaels,* 192 AD2d 346 [1993]). Where the same accounting firm performs a variety of related services for an entity year after year, the true nature of and connection between the various services should be clear before we rely upon mere form agreements and bare assertions to hold that each year's service was separate and discrete from the other years' services.

*Levin v PricewaterhouseCoopers* (302 AD2d 287 [2003]) should not be relied upon to establish that as a matter of law, wherever annual audits are performed pursuant to yearly letters of engagement for each fiscal year, each audit is necessarily a separate and discrete service. In that case, this Court affirmed the dismissal of accounting malpractice and related claims on timeliness grounds. But, there is a critical factual distinction between *Levin* and the present case. There, unlike the case before us, more than three years had passed between the date of the defendant's final audit report and the date the action was commenced. Since established law requires that we measure the limitations period from the date the professional delivered its final report or advice to the client (*id.* at 288, citing *Ackerman v Price Waterhouse,* 84 NY2d 535 [1994]), the malpractice cause of action in *Levin* was untimely even using the latest possible accrual date, namely, the date of the final audit report, even if the continuous representation doctrine were applied. We rejected the plaintiff's suggestion that the continuous representation doctrine be used to extend the accrual of the accounting malpractice and related causes of action to the date when the accounting firm formally resigned from representing the companies it had been auditing, relying upon the definitive holding of *Ackerman v Price Waterhouse* (*see id.*). Since the continuous representation doctrine would not further extend that accrual date, it was unnecessary, in *Levin,* to decide the point that is central to the present case, that of whether the nature of the work performed by that accounting firm constituted discrete yearly audits or one continuous representation (*see id.*). Therefore, although the issue was raised and argued, and addressed by the IAS court, we did not need to address it ourselves, nor did we do so, notwithstanding the dissent's assertion that *Levin* "[c]learly" and "firmly" rejected the application of the continuous representation doctrine on the ground that it

was inapplicable under circumstances where yearly audits were performed. Indeed, even if we *had* issued a ruling on the application of the continuous representation doctrine under the circumstances presented in *Levin*, it would have been dicta, inasmuch as it was unnecessary and superfluous to that decision.

The present appeal squarely presents the question that our decision in *Levin* did not address: whether the work performed by the auditor constituted discrete yearly audits, or one continuous representation. Inasmuch as the motion is based upon CPLR 3211, it is important to remember that the court must accept as true all factual allegations as well as any possible inferences that may be drawn in plaintiff's favor (*see Leon v Martinez*, 84 NY2d 83 [1994]).

Contrary to defendant's contention, the yearly signing of a new audit agreement and the yearly delivery of a final audit report do not alone establish as a matter of law that each year's audit was a separate and discrete event. To rely upon these documents in this manner would place too much weight on formalities and too little on the complexities of modern-day auditing and accounting work. The facts of the particular relationship between the accounting firm and its client must be examined.

When examining the factual allegations in the present case, it is instructive to consider *Ackerman v Price Waterhouse* (252 AD2d 179, *supra*), where annual tax accounting services formed the basis for the application of the continuous relationship doctrine. The defendant accounting firm there was engaged from 1980 to 1989 to annually prepare the tax returns for the partnerships and their limited and general partners, and to prepare Schedules K-1 for distribution to the limited partners. Year after year the firm utilized a particular accounting practice, even after the IRS barred its use in a 1983 Revenue Ruling (*id.* at 185). Additionally, transmittal letters from the accounting firm to the limited partners neglected to include warnings from tax counsel of the potential penalties that could be imposed should the IRS conduct an audit and decide to retroactively apply the Revenue Ruling (*id.* at 186). Evidence supporting the application of the continuous representation doctrine was found in "the repeated use of an improper accounting method and the repeated failure to disclose the risks associated with [it]" (*id.* at 205; *see also Zwecker v Kulberg*, 209 AD2d 514 [1994]).

The present case similarly involves a firm making the same alleged errors year after year, with the additional factor that the

error resulted in miscalculations each of which in turn formed the basis for the subsequent year's calculations. It is alleged that as the auditor for the Partnerships for 1995 to 2000, PwC erroneously certified Lipper Convertibles' financial statements as being in compliance with GAAP. In each audit of the Fund's year-end financial statements beginning in 1995, PwC stated that the statements fairly represented the value of the Fund's portfolio, although PwC learned through its audit procedures beginning in 1995 that the securities held by Lipper Convertibles were being valued at artificially inflated prices. Although PwC was aware that the valuation adopted by Strafaci was significantly greater than the valuations provided by independent third parties, it accepted Strafaci's pricing methods and explanation for the pricing discrepancies, never recommended changes or checks on the valuation procedure, and failed to require footnoting or disclosure for Strafaci's pricing methods. Also, as auditor for a broker-dealer, plaintiff alleges, PwC was required to issue reports on the state of the Fund's internal accounting controls, and thus was presumably aware that there were inadequate controls in place to ensure that the securities valuation methodology complied with GAAP. Nonetheless, PwC certified that there were no material weaknesses in these controls.

More importantly, each year, plaintiff asserts, PwC's services to the Partnerships incorporated and built upon the services rendered in prior years. Each year's audit allegedly took as its starting point the improper valuations and inflated asset figures the firm had certified in the previous year, rather than reviewing those statements for accuracy as a new auditor could be expected to do. As a result, over the years the overstatements of the value of the Fund's securities were not only carried over, but ballooned from $57.08 million in 1996 to $280.78 million by 2000.

When we accept as true the foregoing assertions, that the defendant accounting firm not only failed to take the appropriate action in the face of pricing discrepancies, but also began each year's audit by assuming the accuracy of, and adopting the conclusions of, its previous year's audit, rather than reviewing those prior statements for accuracy, it is inappropriate to conclude that, as a matter of law, each year's audit was necessarily a separate and discrete service. Particularly the firm's alleged reliance each year on its faulty conclusions from the prior year in conducting each year's audits may well support a factual conclusion that the accounting firm's services for the Fund were continuous.

Notably, annual reviews also provided a basis for application of the continuous representation doctrine in *Hall & Co. v Steiner & Mondore* (147 AD2d at 228-229). Similarly, in *Fred Smith Plumbing & Heating Co. v Christensen (supra)*, this Court reversed a dismissal of accounting malpractice claims based upon the accountant's alleged failure to properly advise the plaintiff company regarding the reasonableness of its executive compensation and the option of electing Subchapter S status. This Court rejected the defendant's contention that the action, commenced on March 17, 1994, was untimely because it was based upon tax liabilities determined in connection with a 1990-1991 IRS audit, and therefore derived from advice given prior to that audit. Notwithstanding the defendant's argument that each year's tax return preparation and the attendant advice was specific to that distinct year, this Court initially declined to dismiss (233 AD2d 207, 208 [1996]), and thereafter granted an order striking the statute of limitations defense (242 AD2d 429 [1997]), concluding that the defendant's testimony and the firm's invoices revealed that it was engaged in providing continuous accounting representation until the firm was discharged in May 1992.

We cannot yet tell whether the circumstances here actually warrant the application of the doctrine. But the pre-2000 claims should not have been dismissed prior to a full exploration of the facts.

Accordingly, the order of the Supreme Court, New York County (Karla Moskowitz, J.), entered March 28, 2005, which, to the extent appealed from, granted defendant's motion to dismiss plaintiff's negligence and malpractice claims insofar as they related to the audits completed prior to 2000, should be reversed, on the law, without costs, the motion denied, and such claims reinstated. Appeal from the order of the same court and Justice, entered August 9, 2005, which, to the extent appealable, denied plaintiff's motion to renew, should be dismissed, without costs, as academic in view of the foregoing disposition.

ANDRIAS, J. (dissenting). We respectfully dissent and would affirm, on timeliness grounds, the dismissal of the negligence-based causes of action against PricewaterhouseCoopers premised on audits it conducted from 1995 through 1999. Inasmuch as these were discrete audits conducted on a year-to-year basis, the continuous representation doctrine does not apply to alter the accrual date of these causes of action (*see Levin v PricewaterhouseCoopers*, 302 AD2d 287 [2003]).

The majority alludes to "a critical factual distinction" between *Levin* and the present case, viz., that there, unlike here, three years had passed between the date of the defendant's final audit report and the date the action was commenced, and therefore, using the latest accrual date, the malpractice cause of action in *Levin* was untimely even if the continuous representation doctrine were applied and it was unnecessary to decide whether the nature of the work performed by the accounting firm constituted discrete yearly audits. Thus, it maintains that *Levin* did not address the issue squarely presented here, viz., whether the work performed by the auditor constituted discrete yearly audits or one continuous representation.

Such contention is belied by the record in *Levin*. Contrary to the majority's opinion, the question of whether the nature of the work performed by the accounting firm constituted discrete yearly audits or one continuous representation was the central issue presented in *Levin,* both at nisi prius and on appeal. Clearly, all of plaintiff's claims in *Levin* were dismissed not only because the last audit report was delivered more than three years prior to commencement, but also because the doctrine of continuous representation did not apply so as to toll the accrual date. Here, on the other hand, defendant moved to dismiss the first cause of action for professional malpractice for claims from 1995 through 1999. It *does not* challenge the timeliness of plaintiff's claims for malpractice after 1999.

As here, the plaintiff in *Levin* alleged that audit reports and other representations issued by the defendant accounting firm were false and that defendant auditor failed to adhere to generally accepted auditing standards. In response to the auditor's motion to dismiss the professional malpractice and other claims as barred by the three-year statute of limitations (CPLR 214 [6]), the plaintiff argued that the statute of limitations had been tolled because of the auditor's continuous representation of its clients. In rejecting such argument, the motion court specifically held:

> "Since the audits form the only basis for the Superintendent's malpractice claim, there was no continuous representation. Each audit was a discrete service, ending with Coopers' delivery of an annual audit letter to the Companies. Moreover, the Companies signed separate engagement letters for each fiscal year, pursuant to which Coopers agreed to audit the Companies for that year. Inasmuch as there was

no continuous representation, the statute of limitations was not tolled.

"The Superintendent claims that Coopers continuously represented the companies 'on an ongoing' basis by 'focus[ing] on the claims, reinsurance accounting, underwriting and internal controls which were identified as key *audit* areas of particular concern at the companies' (emphasis supplied). But here the Superintendent concedes that Coopers focused on these matters during its audits, which themselves were discrete services. Thus the malpractice claim must be dismissed as untimely."

The issue was then fully briefed by the Superintendent of Insurance in his appeal to this Court in which he argued, inter alia, that Coopers used the same improper accounting methods in its treatment of the companies' loss reserves, reinsurance balances, and internal controls, without reference to the boundaries of any particular audit period; that its accounting work was interconnected and continuous from year to year with respect to those matters; and that "[e]ach audit was not a discrete service, but rather, the audit work from period to period was inextricably interrelated and interdependent."

This Court firmly rejected those arguments, albeit succinctly, stating: "The continuous representation doctrine does not apply here to alter the accrual date of these causes of action" (302 AD2d at 288). Plaintiff here, as in *Levin,* in an effort to avoid a finding of untimeliness, asserts, in effect, that the specific matter in dispute is defendant's entire accounting relationship with Lipper and not simply its preparation of the audit reports. Just as in *Levin,* we reject such argument.

Moreover, in relying upon *Ackerman v Price Waterhouse* (252 AD2d 179 [1998]), where this Court found ample evidence supporting the application of the continuous representation doctrine, the majority points to the defendant auditor's repeated use there of an improper accounting method and the repeated failure to disclose the associated risk. It overlooks the additional reason given by this Court for finding continuous representation, viz., the accounting firm's representations that it was "handling" the ongoing IRS audit of the firm's clients regarding its more than questionable use of an accounting practice specifically rejected by the IRS (*id.* at 205). Here, there is simply no basis for applying *Ackerman* to the facts of this case.

Plaintiff's claim that he was improperly denied leave to amend his pleadings is not properly before this Court, given his limited

notice of appeal (*see Duke Media Sales v Jakel Corp.*, 215 AD2d 237 [1995]), but were we to review the claim we would find it without merit (*see Davis & Davis v Morson*, 286 AD2d 584, 585 [2001]). We also see no basis to disturb the denial of renewal and have considered plaintiff's remaining contentions and find them unavailing.

MAZZARELLI, J.P., and CATTERSON, J., concur with SAXE, J.; ANDRIAS and SULLIVAN, JJ., dissent in a separate opinion by ANDRIAS, J.

Order, Supreme Court, New York County, entered March 28, 2005, reversed, on the law, without costs, defendant's motion to dismiss plaintiff's negligence and malpractice claims denied, and such claims reinstated. Appeal from order, same court, entered August 9, 2005, dismissed, without costs, as academic in view of the foregoing disposition.