[846 NYS2d 138]

Matthew Serino et al., on Behalf of Themselves and All Others Similarly Situated, Plaintiffs, v Kenneth Lipper et al., Appellants-Respondents, PricewaterhouseCoopers LLP, Respondent-Appellant, and Abraham Biderman, Respondent, et al., Defendants. Lipper Holdings, LLC, et al., Respondents, and Kenneth Lipper, Appellant-Respondent, v PricewaterhouseCoopers LLP, Respondent-Appellant, et al., Defendant.

First Department, November 20, 2007

### APPEARANCES OF COUNSEL

*Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C.,* New York City (*Jeremy H. Temkin, Elkan Abramowitz, Catherine M. Foti, Benjamin S. Fischer* and *David Austin* of counsel), for Kenneth Lipper, appellant-respondent.

*Bennett Jones LLP,* New York City (*Alan P. Gardner* of counsel), for Lipper Holdings, LLC and others, appellants-respondents, and for Jerome Services Corp. LDC, respondent.

*Orrick, Herrington & Sutcliffe LLP*, New York City (*J. Peter Coll, Jr., Peter A. Bicks, Steven J. Fink, Joshua M. Cutler* and *Annabelle Chan* of counsel), for respondent-appellant.

*Orans Elsen & Lupert LLP*, New York City (*Ashley U. Menendez* and *Sheldon H. Elsen* of counsel), for Abraham Biderman, respondent.

### OPINION OF THE COURT

MALONE, J.

The two actions before this Court are the latest among the several lawsuits arising out of the collapse of Lipper Convertibles, L.P. and other investment funds.

Background Facts

Lipper & Company, Inc. (Lipper, Inc.), an asset investment vehicle founded by Kenneth Lipper, formed the following investment hedge funds: Lipper Convertibles, L.P. (Convertibles), Lipper Offshore Convertibles (Offshore Convertibles), and Lipper Convertibles Series II, L.P. (Series II) (collectively the Funds).[1]

During the relevant periods, from 1995 until the second quarter of 2002, PricewaterhouseCoopers (PwC), retained by Mr. Lipper in his capacity as CEO of Lipper L.P., conducted annual audits on behalf of, among others, the Funds. According to the annual letters of engagement between PwC and Lipper, L.P., PwC's auditing responsibilities were, inter alia, to "obtain reasonable, but not absolute, assurance of detecting errors or fraud that would have a material effect on the financial statements as well as other illegal acts having a direct and material effect on financial statement amounts," and "[a]s required by generally accepted auditing standards, [it would] make specific inquiries of management and others about the representations embodied in the financial statements and the effectiveness of internal control over financial reporting."

Between 1996 and 2001, PwC issued unqualified opinions for Convertibles' financial statements for the years ending December 31, 1995 through December 31, 2000.

In the wake of the sudden departure of Edward Strafaci, the Funds' portfolio manager, on January 14, 2002, an internal

---

1. Lipper & Company, L.P. (Lipper L.P.) served as the general partner of Convertibles from the fund's inception through September 30, 1997. From October 1, 1997 onward, Lipper Holdings, LLC (Holdings) served as the general partner of Convertibles and Series II. Jerome Services Corp. LDC (Jerome Services) served as the general partner of Offshore Convertibles. At all times, Mr. Lipper personally owned a majority interest in Lipper L.P., Holdings, and Jerome Services (the Managing Entities).

review of Strafaci's 2001 valuations revealed that Strafaci had not valued the portfolios at "market value," as was required under the operative Partnership Agreements. Rather, Strafaci had overvalued the securities held by Convertibles beginning in 1995.[2] The disclosure of the overvaluation eventually led to the demise of Convertibles.[3]

In 2006, the Securities and Exchange Commission (SEC) charged Lawrence Stoler, the PwC partner assigned to the Lipper account, with knowingly, recklessly, and/or negligently ignoring generally accepted auditing standards (GAAS) and generally accepted accounting principles (GAAP) in conducting the 2000 audit of Convertibles and Series II. He was also alleged to have authorized the issuance of unqualified audit opinions while aware that Strafaci's valuations were significantly higher than independent prices.[4]

The Litigations

On December 2, 2002, the *Serino* action was filed as a putative class action by former limited partners of Convertibles against Holdings, Lipper L.P., Mr. Lipper, Edward Strafaci, Abraham Biderman (the comanager of Convertibles), Lawrence Block (the general counsel of Lipper L.P.), Michael Visovsky (head of the fund's research department) (collectively the Lipper defendants) and PwC. As pertinent to this appeal, the sole

---

2.  On August 11, 2004, Strafaci pleaded guilty in the Southern District of New York to one count of criminal securities fraud, admitting that he knowingly, willfully and intentionally made untrue statements of material fact in connection with his valuation of the securities contained within the portfolios of Convertibles and Series II. During his plea allocution, he acknowledged that he did not apply the valuation methodology set forth in the Partnership Agreement, but rather assigned values to the securities in those funds' portfolios that were materially higher than their actual market value. On May 20, 2005, Strafaci was sentenced to a six-year term of imprisonment.

3.  On February 13, 2004, a judgment was entered against Holdings for approximately $91 million reflecting overpaid performance fees and overwithdrawals by former limited partners. It was determined that Strafaci's overvaluation of Convertibles' portfolio had reached approximately $300 million by the end of 2000.

4.  Stoler ultimately entered into a consent order in which the SEC found, among other things, that Stoler failed to comply with GAAS in the 2000 audits and ignored, discounted, or failed to apprise himself of the substantial audit evidence that Strafaci's valuations for Convertibles investments were not presented in accordance with GAAP and were materially overstated (*Matter of Stoler*, 2006 WL 2128135, at *11 [2006]).

remaining cause of action in the amended complaint is against PwC for negligent misrepresentation/malpractice.[5]

On December 23, 2004, PwC answered the amended complaint and asserted cross claims for contribution against, among others, the Lipper defendants for fraud, negligent misrepresentation, negligence, breach of fiduciary duty and breach of contract.

On January 13, 2005, more than two years after the commencement of the *Serino* action, Holdings, Lipper L.P., Jerome Services and Mr. Lipper (the Lipper parties) commenced the *Holdings* action against PwC and its offshore affiliate PricewaterhouseCoopers (Netherlands Antilles). The complaint alleged causes of action for fraud, negligence, malpractice, breach of fiduciary duty, breach of contract, negligent misrepresentation, and contribution and indemnification, all arising out of PwC's annual audits of the Funds' financial statements for the years ending 1995 through 2000. It also alleged that each audit built upon the services PwC rendered in prior years, and that PwC's services were continuous and performed in the same manner and for the same purpose into the second quarter of 2002.

In February 2006, one year after commencing the *Holdings* action, the Lipper defendants asserted cross claims against PwC in *Serino* that were identical to causes of action they asserted against PwC in the *Holdings* action (i.e., fraud, negligence, malpractice, breach of contract, breach of fiduciary duty, negligent misrepresentation, contribution and/or indemnification). Abraham Biderman, who is a party in the *Serino* action only, separately answered PwC's cross claims in *Serino* and asserted cross claims against PwC for fraud, negligence and contribution.

Motions

PwC moved first to dismiss the entire *Holdings* action pursuant to CPLR 3211 (a) (1), (3), (5) and (7), arguing, inter alia, that (1) the Lipper parties' malpractice claims were untimely; (2) the Lipper parties' remaining claims of fraud, breach of fiduciary duty, negligent misrepresentation and breach of contract were duplicative of their malpractice claims; and (3) Mr. Lipper lacked standing to pursue any negligence or malpractice claims against PwC in his individual capacity. In opposition, the Lipper

---

**5.** The claims against the Lipper defendants for breach of fiduciary duty, money had and received, unjust enrichment, breach of contract, negligence, negligent misrepresentation, malpractice, and aiding and abetting breach of fiduciary duty are stayed (*see Morgado Family Partners, LP v Lipper*, 19 AD3d 262 [2005]).

parties asserted that PwC's course of conduct in connection with its audits of the Funds and other work during 2002 was continuous, thereby triggering the continuous representation doctrine, and that Mr. Lipper's relationship with PwC sufficiently approached privity such that he had independent standing to assert his individual malpractice claims against PwC.

PwC then moved in *Serino* to dismiss, pursuant to CPLR 3211 (a) (4), the noncontribution cross claims asserted by the Lipper defendants as duplicative of claims asserted in the first-filed *Holdings* action and, pursuant to CPLR 3211 (a) (7), the fraud cross claim asserted by Abraham Biderman. In opposition, the Lipper defendants asserted that dismissal under CPLR 3211 (a) (4) was inappropriate since parties to both actions were not identical, the remedy of consolidation was available, and the dismissal of many of the claims in the *Holdings* action on statute of limitations grounds could prejudice their substantive rights and deprive them of the ability to offset any damage award PwC might obtain against them in the *Serino* action.

## Motion Court's Decision

The motion court dismissed the noncontribution cross claims asserted by the Lipper defendants in the *Serino* action, finding that "in the two actions, the parties, the causes of action and the injury [were] all substantially identical" (2006 NY Slip Op 30220[U], *5) and that the Lipper parties could not be prejudiced by their own litigation strategy. However, Biderman's fraud cross claim was sustained.

As to the *Holdings* action, the motion court dismissed the negligence and malpractice claims asserted by Mr. Lipper, finding that he lacked standing to sue, but sustained the remaining Lipper parties' claims for malpractice, ruling that issues of fact existed as to whether the continuous representation doctrine applied (*id*. at *10, citing *Williamson v PricewaterhouseCoopers LLP*, 32 AD3d 179 [2006], *revd* 9 NY3d 1 [2007]).[6]

## Discussion

### Malpractice Claims in the *Holdings* action

The Lipper parties' malpractice claims for the 1995 through 2000 audits accrued, at the latest, in February 2001

---

**6.** While not challenged on appeal, the motion court dismissed the Lipper parties' claims of breach of contract and negligent misrepresentation as duplicative of their malpractice claim, their breach of fiduciary duty claim for failure to state a cause of action, and their fraud claims for audits conducted for years ending 1997 and earlier on statute of limitations grounds.

when the Funds received PwC's 2000 audit (*see Ackerman v Price Waterhouse*, 84 NY2d 535 [1994]). Since the action was not commenced until January 13, 2005, more than three years later, all of the malpractice claims asserted in *Holdings* are time-barred (CPLR 214 [6]; *Levin v PricewaterhouseCoopers*, 302 AD2d 287 [2003]). As for whether the continuous representation doctrine applies to extend the accrual date and thereby render the instant malpractice claims timely, we conclude, after accepting, as we must, the facts as alleged by the Lipper parties on this motion to dismiss, that it does not.

"Application of the continuous representation or treatment doctrine is . . . generally limited to the course of representation concerning a specific legal matter or of treatment of a specific ailment or complaint," and, therefore, "the doctrine is not applicable to a client's or patient's continuing general relationship with a lawyer or physician involving only routine contact for miscellaneous legal representation or medical care, unrelated to the matter upon which the allegations of malpractice are predicated" (*Shumsky v Eisenstein*, 96 NY2d 164, 168 [2001]). The Lipper parties' pleadings reveal that the crux of their accusations against PwC relates to the purported inadequacies of the audits it conducted, as well as the reports that it submitted in connection with those audits, and that the last of those reports was released in February 2001. Their argument that PwC continued to provide accounting and audit-related services through the second quarter of 2002 with respect to the Funds merely states the continuation of the professional relationship and is insufficient to raise an issue of fact as to the applicability of the continuous representation doctrine. Nor does PwC's retaining of a third party during the first half of 2002 to review its prior audits constitute the type of corrective work that would support application of the doctrine. Aside from the fact that PwC did not perform the additional analysis itself, PwC undertook this action not as part of its representation of the Lipper parties but to protect its own interests (*see Mitschele v Schultz*, 36 AD3d 249, 253 [2006]). As such, contrary to the motion court's finding, it is clear that the Lipper parties have not stated any facts to warrant a hearing on the applicability of the continuous representation doctrine, and their pre-2001 claims, as well as their 2001 claim, are untimely.

The motion court's reliance on our decision in *Williamson v PricewaterhouseCoopers LLP* (32 AD3d 179 [2006], *supra*) was

misplaced.[7] Indeed, the persuasiveness of *Williamson* would appear to be eliminated by its reversal subsequent to oral arguments on the *Serino* and *Holdings* appeals (9 NY3d 1 [2007], *supra*). In reinstating the motion court's order dismissing the malpractice claims as time-barred, the Court of Appeals stated that "[g]iven the Funds' lack of awareness of a condition or problem warranting further representation and the fact that no course of representation was alleged, the purpose underlying the continuous representation doctrine would not be served by its application here" (*id*. at 11). Since the *Holdings* complaint also lacks any allegation of a "mutual understanding" between PwC and the Lipper parties of the need for further representation regarding the audits, the continuous representation doctrine does not apply here either. Accordingly, the malpractice claims of all of the *Holdings* plaintiffs should have been dismissed as time-barred.[8]

## Lipper Defendants' Noncontribution Cross Claims in *Serino*

The main reason given by the motion court for dismissing the Lipper defendants' noncontribution cross claims in *Serino* was that "the progression of two actions 'involving substantially the same parties and issues' would be an 'indefensible . . . waste of judicial energies' " (2006 NY Slip Op 30220[U], *7 [citation omitted]). However, given that there is no longer another action

---

**7.** This case is more analogous to the situation presented in *Levin v PricewaterhouseCoopers* (302 AD2d 287 [2003], *supra*), where, in a procedural stance identical to *Holdings*, we held that the continuous representation doctrine did not apply to alter the accrual date. The *Levin* court also rejected the argument raised here that the statute of limitations began to run, not on the date PwC delivered its last report to the companies, but rather several months later when PwC resigned the representation.

**8.** While Mr. Lipper's negligence and malpractice claims should be dismissed on statute of limitations grounds, the portion of the order dismissing Mr. Lipper's negligence/malpractice claims for lack of standing was error. We find that Mr. Lipper's allegations sufficiently established a relationship between him and PwC that approached privity such that he had standing to sue (*Credit Alliance Corp. v Arthur Andersen & Co.*, 65 NY2d 536 [1985]). Thus Mr. Lipper repeatedly directed Stoler to inform him of any issue or problem PwC had discovered relating to any fund it had audited because he was relying on PwC and its audit reports not only for running Convertibles but also in making personal financial decisions, that "almost all of [his] net worth and a significant portion of his family's assets were invested in" Convertibles and the Managing Entities, and that he would suffer substantial losses "both personally and financially" in the event of any lapses. In addition to PwC's audit work for Convertibles, PwC prepared Mr. Lipper's personal tax returns and balance sheets reflecting his net worth as well as a valuation of the Managing Entities, which necessarily required an intimate familiarity with Mr. Lipper's personal finances, including the extent of his interest in Convertibles.

pending between the Lipper parties and PwC for negligence and malpractice (by virtue of our dismissal of the Lipper parties' remaining malpractice claims in *Holdings*), the timely asserted *Serino* cross claims for fraud, negligence, malpractice, breach of contract, breach of fiduciary duty, and negligent misrepresentation should be reinstated.

Biderman's Cross Claim for Fraud in *Serino*

◼ Abraham Biderman, the comanager of Convertibles and a defendant in the *Serino* action only, asserted a cross claim for fraud, alleging, inter alia, that PwC falsely represented that the Funds' financial statements were fairly presented in all material respects, that he relied upon the financial statements in operating and managing the Funds, and that PwC knew that Strafaci inflated the values of the Funds' securities but failed to disclose its knowledge to senior management. The fraud cross claim should have been dismissed.

"In order to recover for fraud, plaintiffs must show a representation of material fact, the falsity of that representation, knowledge by the party who made the representation that it was false when made, justifiable reliance by the plaintiff, and resulting injury" (*Pope v Saget*, 29 AD3d 437, 441 [2006], *lv denied* 8 NY3d 803 [2007]). The scienter requirement is satisfied by Biderman's allegations that the Lipper parties' own audits, conducted after Strafaci left, indicated that PwC had discovered significant discrepancies in Strafaci's valuations, and was aware of the information that contradicted its own opinions, but nevertheless continued to issue clean audit opinions and failed to inform Biderman or the other Lipper parties of the discrepancies (*see Houbigant, Inc. v Deloitte & Touche*, 303 AD2d 92, 97 [2003]). However, Biderman fails to adequately plead that he justifiably relied on PwC's false audit reports. As the yearly letters of engagement make clear, it was management's responsibility, i.e., Biderman and the Funds' portfolio manager, to prepare the financial statements from which the audit opinions were generated. Since the inflated valuations were contained in the financial statements and Biderman had access to Strafaci's valuations and could have discovered his comanager's alleged misfeasance at any time, there was no justifiable reliance (*see Miller v Doniger*, 272 AD2d 73 [2000]). We reject Biderman's argument that *DaPuzzo v Reznick Fedder & Silverman* (14 AD3d 302 [2005]), involving facts distinguishable from the instant appeals, relieves him of the requirement to establish reliance.

Accordingly, the order of the Supreme Court, New York County (Karla Moskowitz, J.), entered October 5, 2006, which, inter alia, in the *Serino* action, dismissed the Lipper defendants' noncontribution cross claims against defendant PwC and sustained defendant Biderman's cross claim for fraud against PwC, and in the *Holdings* action, dismissed defendant Kenneth Lipper's negligence and malpractice claims against PwC and sustained plaintiffs Lipper parties' causes of action for malpractice against defendant PwC, unanimously modified, on the law, to dismiss all of the Lipper parties' causes of action for malpractice in the *Holdings* action, and, in the *Serino* action, to reinstate the Lipper defendants' noncontribution cross claims against PwC and dismiss defendant Biderman's cross claim for fraud against PwC, and otherwise affirmed, without costs. The Clerk is directed to enter judgment dismissing the complaint in the *Holdings* action.

Tom, J.P., Andrias and Gonzalez, JJ., concur.

Order, Supreme Court, New York County, entered October 5, 2006, modified, on the law, to dismiss all of the Lipper parties' causes of action for malpractice in the *Holdings* action, and, in the *Serino* action, to reinstate the Lipper defendants' noncontribution cross claims against PwC and dismiss defendant Biderman's cross claim for fraud against PwC, and otherwise affirmed, without costs. The Clerk is directed to enter judgment dismissing the complaint in the *Holdings* action.