■ MATTHEW JOHNSON, Respondent, v LAW OFFICE OF KENNETH B. SCHWARTZ et al., Defendants, and HELENE STETCH et al., Appellants. [46 NYS3d 1]—

Order, Supreme Court, Bronx County (John A. Barone, J.), entered on or about June 10, 2015, which, to the extent appealed from, denied defendants Helene Stetch's, Andres Diaz (Mr. Diaz), Giles Properties Inc. (Giles), and Diaz Group Design Build Corp.'s (collectively, the Diaz defendants), and Builders Mutual Insurance Company's (Builders Mutual) motions to dismiss the complaint as against them and Stewart Title Insurance Company's (Stewart Title) motion for summary judgment dismissing the complaint as against it and for costs against plaintiff, unanimously modified, on the law, and on the facts and in the exercise of discretion insofar as costs are concerned, to grant the Diaz defendants' and Builders Mutual's motions, to grant Stetch's motion to dismiss the fourth cause of action without prejudice and plaintiff's request for attorneys' fees with prejudice, and to grant Stewart Title's motion and remand for a hearing to determine the amount of costs, expenses, and attorneys' fees reasonably incurred by it, and otherwise affirmed, without costs.

In December 2006, plaintiff entered into a contract with defendant Giles whereby plaintiff agreed to buy, for $995,000, a house built by Giles. The contract provided, inter alia, that closing would occur on or about February 7, 2007, provided that Giles obtained a final certificate of occupancy from the

Department of Buildings. It also stated that "title will not close without purchaser's consent until a final certificate of occupancy has been issued." Plaintiff retained defendant Law Office of Kenneth Schwartz to act as his attorney in the proposed purchase. The firm assigned defendant attorney Helene Stetch to the matter.

Closing on the sale took place on September 24, 2007. On that date, Andres Diaz, as president of Giles, signed a deed conveying the property. The deed was presented for recording by nonparty Judicial Title Insurance Agency, LLC, as agent for nonparty First American Title. In the contract, plaintiff acknowledged "that Judicial Title Insurance Agency has issued or will issue a policy of title insurance." Also on September 24, 2007, plaintiff signed a mortgage for the property, which was presented for recording by Judicial Title Insurance Agency as agent for First American Title.

The points of contention arise from the failure of Giles to obtain a certificate of occupancy before closing. In the complaint, plaintiff alleges that "[a]ll" the defendants encouraged him to close without the certificate of occupancy, stating that "these types of things," i.e., the failure to provide a valid certificate of occupancy, are "normal problems at closing" and that plaintiff could be adequately protected if he did close in spite of this "default." While the complaint refers to all defendants, Stewart Title and Builder's Mutual submitted affidavits on their motions stating that no representative of theirs was present at closing. Nevertheless, absent the certificate of occupancy, an escrow contract was prepared, requiring that $100,000 be held in escrow pending receipt of the certificate of occupancy.

Plaintiff alleges that the escrow was ultimately released to the attorney defendants (including Stetch), but, in spite of due demand, the attorney defendants "failed, refused and neglected to remit the money to Plaintiff." He further alleges that pursuant to a "Stipulation of Settlement for Non-Completion of Project," with Giles as insured by Builder's Mutual Insurance Company, a settlement of $45,000 was paid to the attorney defendants but, in spite of due demand, they refused to pay the moneys to plaintiff. Plaintiff commenced the instant action on or about March 15, 2013. He alleges that Andres F. Diaz, while the sole owner of Giles, also used another corporate alter ego, Diaz Group Design Build Corp. in his dealings with plaintiff. He also alleges that Stewart Title, and its agent, defendant Empire Land Services Corp. (Empire), were both hired to insure (and ensure) that plaintiff received valid title to the premises.

Plaintiff alleges breach of contract, malpractice, false promises, and breach of the duty of good faith and fair dealing for failure to pay plaintiff $45,000 as against the Schwartz firm, Kenneth Schwartz and Helene Stetch. He alleges breach of the duty of good faith and fair dealing and breach of contract as against Giles, Andres Diaz and the Diaz Group. Finally, he alleges breach of contract and failure to pay plaintiff $45,000 as against Stewart Title and Empire.

On or about July 17, 2013, Builders Mutual moved to dismiss based upon improper service, lack of personal jurisdiction, and failure to state a cause of action. On or about July 23, 2013, Stetch moved to dismiss based on the statute of limitations and failure to state a claim. On or about October 4, 2013, the Diaz defendants moved to dismiss, inter alia, for failure to state a claim. On June 19, 2013, Stewart Title's attorney sent a letter to plaintiff's counsel stating that he was unable to locate any evidence that Stewart Title had issued a title insurance policy. He requested that plaintiff withdraw his claims against Stewart Title. On July 2, 2013, plaintiff's counsel refused to withdraw the claims. Stewart Title then served discovery requests on or about July 8, 2013, filed an amended answer on July 22, 2013, and moved for summary judgment and sanctions on November 13, 2014.

The motion court denied the motions with leave to renew after the conclusion of discovery, stating that there had not been sufficient discovery to determine the merits of the motions.

Plaintiff and Giles were the only parties to the contract whereby plaintiff would purchase the house that Giles would construct. Thus, to the extent the fifth cause of action alleges that all three Diaz defendants breached the contract, it must be dismissed as against Mr. Diaz and Diaz Group Design Build Corp. (*see e.g. Leonard v Gateway II, LLC*, 68 AD3d 408 [1st Dept 2009]). For the same reason, to the extent the fourth cause of action alleges breach of the duty of good faith and fair dealing, it must be dismissed as against Mr. Diaz and Diaz Group Design Build Corp. (*Duration Mun. Fund, L.P. v J.P. Morgan Sec. Inc.*, 77 AD3d 474 [1st Dept 2010]).

The allegations that Mr. Diaz is the sole owner of Giles and that he also used Diaz Group Design Build Corp., "another corporate alter ego," in his dealings with plaintiff are far too conclusory to support piercing Giles's corporate veil to reach Mr. Diaz and then impute his liability to Diaz Group Design Build Corp. (*see e.g. East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc.*, 16 NY3d 775 [2011]). Plaintiff's plea

that he needs discovery is unavailing (*see e.g. East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc.*, 66 AD3d 122, 128-129 [2d Dept 2009], *affd* 16 NY3d 775 [2011]).

To the extent the fourth cause of action can be read as alleging civil conspiracy, it must be dismissed as well, since conspiracy to commit a tort is not a cause of action (*see Alexander & Alexander of N.Y. v Fritzen*, 68 NY2d 968 [1986]).

To the extent the fourth cause of action can be read as alleging fraudulent inducement, it is insufficiently pleaded; it does not allege that the Diaz defendants or Builders Mutual made any misrepresentations to induce plaintiff to sign the document that supposedly released Builders Mutual in exchange for $45,000. Plaintiff's affidavit indicates that he dealt only with his former attorneys regarding the release.

Although the sixth cause of action purports to be against the Diaz defendants, it in fact alleges a cause of action against the attorney defendants for converting the $45,000.

The December 2006 contract between Giles and plaintiff merged into the September 2007 deed (*see e.g. TIAA Global Invs., LLC v One Astoria Sq. LLC*, 127 AD3d 75, 85 [1st Dept 2015]). Plaintiff alleges that Giles breached the contract because the property did not have a final certificate of occupancy (C of O) and was deficiently constructed. However, the provisions of the contract regarding those items did not survive delivery of the deed.

The fourth cause of action appears, based on the demand for damages, to relate to plaintiff's supposed agreement to release Builders Mutual in exchange for $45,000. Since this agreement is between Builders Mutual and plaintiff, any claim that Giles breached the covenant of good faith and fair dealing implied in the release fails (*see Duration Mun. Fund*, 77 AD3d at 474-475).

As to Builders Mutual, accepted as true, the complaint and its exhibits indicate that plaintiff agreed to release Builders Mutual in return for $45,000. However, plaintiff does not allege that Builders Mutual failed to pay the money; instead, he alleges that the money was paid to the attorney defendants, who refused to remit it to him.

The fifth cause of action fails to state a claim against Builders Mutual (*see Harris v Seward Park Hous. Corp.*, 79 AD3d 425, 426 [1st Dept 2010]). Although it alleges that Builders Mutual breached its "contract with Plaintiff," Builders Mutual had no such contract. The allegations show that the fifth cause of action refers to Giles's breach of its December 2006 contract

with plaintiff. Even if, arguendo, Builders Mutual insured Giles, its contract was with Giles, not plaintiff.

As to defendant Stetch, she contends that all claims against her are time-barred. Although couched as contract claims, the first and second causes of action are essentially malpractice claims, and they are not time-barred. Plaintiff alleges that the attorney defendants should not have allowed him "to purchase the premises without a Final C of O" or to enter into the escrow agreement. Since plaintiff purchased the premises on or about September 24, 2007, and entered into the escrow agreement on that date, the first and second causes of action accrued at that time (*see Glamm v Allen*, 57 NY2d 87, 93 [1982]). Absent the continuous representation doctrine, the statute of limitations would have run in September 2010 (CPLR 214 [6]; *see also Matter of R.M. Kliment & Frances Halsband, Architects [McKinsey & Co., Inc.]*, 3 NY3d 538, 539, 541-543 [2004]). Plaintiff did not sue until March 2013. However, in opposition to Stetch's motion to dismiss, plaintiff submitted an affidavit saying that he was continually represented by Stetch up to and including February 2012. The only matter for which plaintiff retained the attorney defendants was the purchase of his home. Thus, as required for the application of the doctrine, Stetch's continuous representation related "to the matter upon which the allegations of malpractice are predicated" (*Serino v Lipper*, 47 AD3d 70, 76 [1st Dept 2007] [internal quotation marks omitted], *lv dismissed* 10 NY3d 930 [2008]).

The gravamen of the sixth cause of action is that the attorney defendants converted the $45,000 that plaintiff was slated to receive from Builders Mutual. The three-year statute of limitations runs from the date that the conversion takes place (*see Vigilant Ins. Co. of Am. v Housing Auth. of City of El Paso, Tex.*, 87 NY2d 36, 44-45 [1995]). "[I]t is well settled that, where the original possession is lawful, a conversion does not occur until after a demand and refusal to return the property" (*D'Amico v First Union Natl. Bank*, 285 AD2d 166, 172 [1st Dept 2001], *lv denied* 99 NY2d 501 [2002]). Stetch argues that the conversion occurred before February 23, 2010, so the statute of limitations would have run on or about February 22, 2013. According to Stetch, plaintiff's $45,000 conversion claim is time-barred because plaintiff sued on or around March 15, 2013, nearly one month after the supposed statute of limitations had run. However, there is nothing in the record to support this contention. The email from plaintiff's current counsel indicating that the $45,000 was released to plaintiff's former attorneys, including Stetch, before February 23, 2010 is insuf-

ficient to establish when plaintiff actually demanded the $45,000 from the attorney defendants and when the attorney defendants refused to remit the money to plaintiff. Therefore, the precise date of conversion is unclear.

Similarly, the gravamen of the third cause of action, which is couched as a fraud claim, is that the attorney defendants stole the $100,000 escrow. However, this cause of action is not subject to CPLR 3211 dismissal as time-barred, as there is no clear indication in the record when the supposed $100,000 escrow was released. If discovery establishes that the $100,000 was converted more than three years before March 15, 2013, then Stetch may move for summary judgment based on the statute of limitations.

Stetch is correct that the first and second causes of action fail to state a claim for breach of contract. However, as they can be construed as legal malpractice claims, they need not be dismissed (*see Leon v Martinez*, 84 NY2d 83, 87-88 [1994]).

The complaint says the fourth cause of action is for breach of the duty of good faith and fair dealing, presumably in connection with the $45,000 that plaintiff was supposed to get from Builders Mutual. As Stetch is not a party to the alleged agreement to pay $45,000, she cannot be sued for breach of the implied covenant of good faith and fair dealing (*see Duration Mun. Fund*, 77 AD3d at 474-475).

To the extent the fourth cause of action can be construed as a claim that Stetch fraudulently induced plaintiff to release Builders Mutual, it is inadequately pleaded. However, in his affidavit, plaintiff says he accepted Builders Mutual's supposed offer upon the advice of his attorneys. As this indicates that plaintiff might be able to allege a specific misrepresentation by Stetch, the dismissal of the fourth cause of action as against her is without prejudice.

On the fifth cause of action, plaintiff requests legal fees in addition to damages. Stetch correctly points out that plaintiff is not entitled to attorneys' fees due to the American rule (*see e.g. Hooper Assoc. v AGS Computers*, 74 NY2d 487, 491 [1989]).

The complaint must be dismissed as against Stewart Title. It is undisputed that Stewart Title did not issue title insurance when plaintiff purchased his property. The issues of fact that plaintiff tried to create in opposition to Stewart Title's motion for summary judgment are not genuine, but feigned; they are speculative and contradicted by documentary evidence (*see e.g. Cillo v Resjefal Corp.*, 16 AD3d 339, 340-341 [1st Dept 2005]).

Plaintiff's plea that he needed discovery is unavailing,

especially since there is no evidence in the record that he served any discovery requests (*see e.g. Meath v Mishrick*, 68 NY2d 992, 994 [1986]).

Moreover, Stewart Title's motion for costs against plaintiff due to his frivolous conduct should be granted (*see Borstein v Henneberry*, 132 AD3d 447 [1st Dept 2015]). In his affidavit in opposition to Stewart Title's motion, which was sworn to on January 7, 2015, plaintiff asserted a material factual statement that was false (*see* 22 NYCRR 130-1.1 [c] [3]). He said that, with the exception of various documents—none of which was the title insurance policy for the purchase of his home—"I do NOT have any other documents." However, on or about December 23, 2014, plaintiff had produced nonparty First American Title Insurance Company's policy for said purchase.

Moreover, plaintiff should have known that Stewart Title did not issue the title insurance policy for the purchase of his home. The contract whereby plaintiff agreed to buy a house from Giles said, "Purchaser . . . acknowledges that [nonparty] *Judicial Title Insurance Agency* has issued or will issue a policy of title insurance insuring title to the land upon which the subject premises are to be built" (emphasis added). The deed for plaintiff's property was presented for recording by Judicial Title Insurance Agency as agent for First American Title; in addition, the metes and bounds description of the property is on a page headed "The Judicial Title Insurance Agency LLC—Title Number: 93163FA-B." Both the contract and the deed are exhibits to the complaint.

Plaintiff's conduct is also frivolous under 22 NYCRR 130-1.1 (c) (1), because, even if Stewart Title had issued a title insurance policy for plaintiff's house, it would not have been liable for the lack of a final C of O, as Stewart Title's attorney pointed out to plaintiff's counsel in an attempt to have him withdraw the claims against Stewart Title (*see Voorheesville Rod & Gun Club v Tompkins Co.*, 82 NY2d 564, 571 [1993]). *Voorheesville* was one of the cases that Stewart Title's attorney sent to plaintiff's attorney. "In determining whether the conduct undertaken was frivolous, the court shall consider . . . whether or not the conduct was continued when its lack of legal or factual basis . . . was brought to the attention of counsel or the party" (22 NYCRR 130-1.1 [c]; *see also Borstein*, 132 AD3d at 452). Concur—Tom, J.P., Sweeny, Richter, Manzanet-Daniels and Webber, JJ.