■ KENDALLE POPE, as Executrix of MAUD ATKINS, Deceased, et al., Respondents, v ALIX SAGET et al., Defendants, and ALEW

Management & Development, LLC, et al., Appellants. Kendalle Pope, as Executrix of Maud Atkins, Deceased, et al., Respondents, v Alix Saget et al., Defendants, and Equity Settlement Services, Inc., Appellant. [817 NYS2d 1]—

Order, Supreme Court, New York County (Sherry Klein Heitler, J.), entered January 24, 2005, and order, same court and Justice, entered September 23, 2005, denying defendants' motions to dismiss the complaints against them, unanimously modified, on the law, to the extent of granting the motions to dismiss the causes of action of fraud and misrepresentation as against appealing defendants, Alew Management & Development, LLC, Suntrust Mortgage, Inc., Eliezer Elias and Equity Settlement Services, Inc., and otherwise affirmed, without costs.

This case arises from a purported transfer of property at 145 West 132nd Street, Harlem, from an aged owner to multiple successive owners. The original owner, Maud Atkins, died on February 12, 1998. Plaintiff Kendalle Pope is Atkins's cousin and her executrix. Plaintiff Kevin Smith is Pope's brother and, under the Atkins will, a devisee to whom she bequeathed the subject premises.

A deed dated January 17, 1998 purportedly conveyed the premises from Atkins to defendant Alix Saget[1] less than one month before Atkins's death. The deed misspelled Atkins's first name. It appeared to be notarized in Florida, which 96-year-old

---

**1.** Saget is not a party to either appeal. Defendant Alix Saget, Jr. has asserted his Fifth Amendment privilege against self-incrimination, and criminal charges have been filed against Saget and defendant David Carter. These defendants also have not appealed.

Atkins, bedridden, unable to write and suffering from dementia, had not visited. It was not recorded until more than four years later on May 22, 2002.

In its decision and order entered January 24, 2005, the motion court declared the deed a forgery and, thus, void. In the meantime, however, by deed dated July 16, 2002 and recorded August 14, 2002, Saget purported to convey the premises to defendant Mercury Homes Rehab, LLC (Mercury).[2] Defendant-appellant Equity Settlement Services, Inc. (Equity) was the abstract company that conducted the title search for the purported Saget-Mercury sale.

Before the Saget-Mercury deed was recorded, a deed dated August 7, 2002, subsequently recorded October 10, 2002, conveyed the premises from Mercury to defendant-appellant Eliezer Elias. He then conveyed the property to a real estate corporation he owned in part, Alew Management & Development, LLC (Alew).

The Atkins will was admitted to probate in New York County Surrogate's Court on October 22, 2002, and the premises were subsequently devised to Smith. Plaintiff executrix's attorney apparently uncovered the fraudulent conveyances when he ordered a title search in connection with probate.

In January 2003, plaintiffs commenced this action alleging forgery, misrepresentation and fraud. They acknowledged, however, that they and their predecessors in interest "have been in actual possession and occupancy" of the subject property since 1979.

In the second cause of action alleging misrepresentation, plaintiffs claimed that defendants acted in concert, transferring title to the premises in quick succession, and that they filed the fraudulently created documents with the City Register knowing that the public would rely on the records, and "in furtherance of their intent to defraud plaintiffs."

In the third cause of action alleging fraud, plaintiffs claimed that they relied upon the recorded documents to their detriment. They claimed damages of $1 million.

In September 2004, defendants Suntrust, Alew and Elias opposed plaintiffs' motion for summary judgment, and cross-moved to dismiss the claims for damages against them. They conceded that there was no delivery of a deed between Atkins and Saget, and that title in the premises should be revested in the plaintiffs. However, they asserted that they were not the parties involved in the forgery, or in any fraud or misrepresen-

---

2. Mercury is not a party to either appeal.

tation. They further argued that plaintiffs had not sustained any recoverable monetary damages.

In a decision and order entered January 24, 2005, the court, in that part of the order not appealed here, granted summary judgment to plaintiffs to the extent of declaring the Atkins-Saget deed void. The court found that neither Elias nor Alew held valid title to the property and that Suntrust had lost its mortgage security.[3] The court denied summary judgment to plaintiffs on the issue of damages. It found that plaintiffs were unable to show what rental loss was caused by the fraudulent transfer or transfers and what efforts were made to market the property during the relevant time frame.[4]

The court also denied defendants' motion to dismiss the claims of fraud and misrepresentation against them. The court found a triable issue of fact existed as to whether defendants knew or should have known that the Atkins-Saget deed was forged. The court found that factors like the incorrect name on the deed, the series of rapid transfers, and the unusually long time between the execution of the Atkins-Saget deed and its recording could have put defendants on notice that something was amiss with the Atkins-Saget deed.

In September 2005, the court denied a similar motion to dismiss the complaint against defendant Equity. The court observed that if Equity knew or had reason to know that the Atkins deed was forged, then plaintiffs had a viable fraud claim against it.[5]

Now, in this consolidated appeal, defendants-appellants Alew, Elias and Suntrust and defendant-appellant Equity Settlement

---

**3.** In fact, by this point, Suntrust was no longer a mortgagee. Although the record does not show any assignment of mortgage from Suntrust to Fleet, it does show the assignment of the mortgage by Fleet to Independence Community Bank on August 12, 2002.

**4.** The court noted that $20,000 in tax liens apparently had been satisfied at the time of the Saget-Mercury transfer, and that Elias apparently had paid real estate taxes after the purported transfer of the property to him and then Alew. Thus, the court observed that even if damages could be proved, there remained a factual issue as to whether there would be an offset for these tax payments.

**5.** In the same order, the court denied a renewal motion by defendants Alew, et al. to dismiss the damages claim but directed plaintiffs to produce an affidavit indicating the nature of their efforts, if any, to rent the premises to others. The court directed plaintiffs to submit the affidavit to defendants on or before October 14, 2005, and to conduct a deposition of plaintiffs' damages expert on October 26, 2005. It cannot be determined from the record whether these directives were complied with. Trial was scheduled for November 28, 2005. Most recently, this Court stayed trial pending the outcome of this appeal.

Services, Inc. assert that the fraud claims against them were not pleaded with sufficient particularity. They further argue that even if the fraud claims were properly pleaded and proved, plaintiffs have failed to show they have any recoverable damages.

We agree, and for reasons set forth below we modify both orders of the motion court to the extent of dismissing the fraud and misrepresentation causes of action against all the appealing defendants.

The elements required to be set forth in a viable fraud action are well established. In order to recover for fraud, plaintiffs must show a representation of material fact, the falsity of that representation, knowledge by the party who made the representation that it was false when made, justifiable reliance by the plaintiff, and resulting injury (see *Channel Master Corp. v Aluminium Ltd. Sales*, 4 NY2d 403, 406-407 [1958]). CPLR 3016 (b) requires that these elements of fraud be pleaded in detail (see *Salles v Chase Manhattan Bank*, 300 AD2d 226, 235 [2002]; *Monaco v New York Univ. Med. Ctr.*, 213 AD2d 167, 169 [1995], *lv dismissed in part and denied in part* 86 NY2d 882 [1995]). In addition, the damages incurred by reason of the fraudulent conduct must be actual pecuniary losses (see *Hanlon v Macfadden Publs.*, 302 NY 502 [1951]).

In this case, while the record strongly suggests that much was amiss with respect to the actions of the appealing defendants, the pleadings, ultimately, are inadequate to allege fraud. With respect to Equity, plaintiffs cite old case law equating fraud with recklessness so extreme as to justify a finding that the title company had no genuine belief in the accuracy of the title report. However, plaintiffs fail to allege in other than conclusory terms that Equity was anything other than an abstract company undertaking a routine, albeit careless, title search.

With respect to Suntrust, fraud is likewise not adequately pleaded. It may be tempting to speculate about Suntrust's decision to make a bad loan without exercising sufficient due diligence in examining the chain of title, especially since it divested itself of the risk almost immediately by assigning the mortgage. However, there is no factually supported allegation that the Suntrust mortgage was not a routine business transaction. Hence, the act of recording the mortgage was not, on the available record, a misrepresentation.

With respect to the remaining defendants, Elias and Alew, subsequent purchasers would be on notice of the same irregularities in the Atkins-Saget deed as was Equity. Addition-

ally, Elias and Alew had a vested interest in acquiring the property in contrast to Equity's ministerial role. Elias also should have been on notice given the fact that his closing with Mercury as seller took place on August 7, 2002, one week before the Saget-Mercury deed was actually recorded.

At deposition, Elias was emphatic that he knew nothing about Mercury nor had any relationship with it. However, his deposition stands out in the record as an exercise in obfuscation and denials in the face of documented facts that are contradictory on several germane points. There is also significant record information to show common purposes and related activities among Mercury, Elias, Alew and several other persons engaged in the real estate trade in New Jersey.[6]

Nevertheless, assuming arguendo that the acts of recording the various deeds were themselves false statements, and thus that the complaint sufficiently pleads misrepresentation and scienter, plaintiffs fail to show that these misrepresentations were made to them or their agents. Plaintiffs also fail to show how they justifiably relied on such misrepresentations.

Replete throughout the deposition of plaintiff executrix is her testimony that she did not know the various defendants, had not communicated with them, and, impliedly, had not relied on any statements made by them. In short, plaintiff failed to show that she engaged in particular action, or that nonaction resulted, because of these defendants' actions.

Moreover, notwithstanding an allegation that plaintiffs suffered damages in the amount of $1 million, actual damages are not pleaded. Nor did the deposition testimony of plaintiff executrix establish more than nominal personal damages.

On appeal, plaintiffs contend that because of the cloud on title, they could not "for example" bring a nonpayment proceeding against any tenant at the premises. However, no such tenant is identified. Plaintiffs also claim they could not lawfully rent the premises. They refer to the deposition testimony of their expert to establish that the estate lost rental income of $241,920. However, plaintiffs fail to show that they actually tried to rent the property but were thwarted by the cloud on title.

Ultimately, good title vested in the estate and eventually in

---

**6.** Elias testified that he had heard about the property from a friend who was a real estate broker living in Lakewood, New Jersey. Elias further testified that the mortgage with Suntrust was arranged through a broker whose name Elias did not remember, except that the broker had a company named Fidelity Funding that was located in Lakewood, New Jersey.

Smith, and the sum total of damages appears to have been nonpecuniary aggravation and attorneys' fees. The measure of damages in an action predicated on fraud is the actual pecuniary loss. Here, according to plaintiff executrix's own testimony, plaintiffs suffered no such loss, let alone such loss attributable to defendants. Thus, plaintiffs' second and third causes of action against the appealing defendants must be dismissed. Concur—Tom, J.P., Friedman, Sullivan, Gonzalez and Catterson, JJ.