MP Cool Invs. Ltd. v Forkosh (2016 NY Slip Op 04159)





MP Cool Invs. Ltd. v Forkosh


2016 NY Slip Op 04159


Decided on May 31, 2016


Appellate Division, First Department


Gische, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 31, 2016
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Peter Tom,J.P.
David B. Saxe
Rosalyn H. Richter
Judith J. Gische
Troy K. Webber, JJ.


650730/15 1205 

[*1]MP Cool Investments Ltd., Plaintiff-Appellant,
v
Dan Forkosh, et al., Defendants-Respondents.



Plaintiff appeals from the order of the Supreme Court,
New York County (Shirley Werner Kornreich, J.), entered October 29, 2015, which granted defendants' motion to dismiss the complaint.



Kasowitz, Benson, Torres & Friedman LLP, New York (David S. Rosner, Michael C. Harwood and Hershy Stern of counsel), for appellant.
Troutman Sanders LLP, New York (Aurora Cassirer and Bennett Moskowitz of counsel), for respondents.



GISCHE, J.


In this appeal over allegations of common law fraud in connection with the production and sale of a commercial heating and ventilation system by an Israeli-based company, we are asked to scrutinize every required element of a claim of fraud with specific emphasis on the effect of the claimant's status as a so-called sophisticated investor. Plaintiff alleges, among other things, that defendants, formerly controlling shareholders in DuCool, Ltd., intentionally provided plaintiff with false information over an extended period of time, inducing it to repeatedly invest in DuCool, by claiming the company possessed new technology for innovative heating, ventilation and air conditioning systems (HVAC), the units were more efficient than conventional units in the United States, and DuCool products could be installed without any expensive on-site retrofitting. Plaintiff also alleges that defendants intentionally concealed and withheld critical information regarding mounting maintenance and quality problems with these HVAC systems and that all the data defendants provided, including economic and technical [*2]models, and studies of current product installations, were false.
We affirm the motion court's dismissal of plaintiff's fraud claims because they were not pleaded with the requisite particularity (Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 178 [2011]; CPLR 3016[b]). Moreover, plaintiff's allegations do not establish justifiable reliance as required to prove fraud because plaintiff is a sophisticated investor that had the means available to it to learn the true nature and real quality of the investment it made (ACA Fin. Guar. Corp. v Goldman, Sachs & Co., 25 NY3d 1043, 1044 [2015]). Nor do the allegations support the element of scienter necessary for fraud. We also hold that the facts alleged do not support a claim for breach of fiduciary duty or breach of an implied covenant of good faith and fair dealing. Plaintiff is presently the majority owner of DuCool, an Israeli company that manufactures commercial and industrial heating and ventilation systems. In December 2009, plaintiff entered into an exclusive option agreement with DuCool to obtain a majority interest in the company. Pursuant thereto, plaintiff made an initial investment, by which it acquired an initial 49% interest in the company for $30 million and installed three officers on the board. Plaintiff had the option to make additional investments in DuCool, which ultimately would permit plaintiff to acquire a majority interest in the company. In May 2012, plaintiff exercised its option, thereby acquiring an additional 23.2% equity interest in DuCool, by investing the sum of $30 million, and also purchased defendants' shares in the company for $10 million. Altogether, by 2012, plaintiff had invested $70 million in DuCool and acquired a 72% majority interest in the Company. Subsequent investments, although not at issue here, brought plaintiff's equity interest in the Company to 90%.
The parties' agreement makes it clear that before making any investment in DuCool, plaintiff had a 90-day due diligence period during which it was afforded full access to the company's business operations, properties, technology data and plans. Plaintiff also had the right to direct access to all of DuCool's customers, but exercised that right only as to one customer. Plaintiff alleges that it availed itself of the right to conduct "extensive" due diligence by, among other things, hiring two consultants. It hired one company (QuinetiQ) to perform technical evaluations of DuCool's technology, manufacturing facility, and installation sites, and another company (McKinsey) to evaluate the company's business model, financial information, and market potential. McKinsey drafted a proposed business plan for the company that was included in the parties' initial purchase agreements. After the initial investment, but before the second investment, plaintiff appointed three of the seven members of the board of directors and two of McKinsey's representatives were installed as officers of DuCool.
Plaintiff claims that in the period before it purchased any interest in DuCool (pre-investment) and during the two year period after its first investment (i.e. 2010 through 2012), when it acquired a majority interest in the company, defendants made numerous knowingly false representations and provided inaccurate data about DuCool's air conditioning technology, financial condition and overall successes in the United States and other markets. Plaintiff alleges that it relied on this information, inducing it to repeatedly invest in DuCool, believing it was a better performing company than it was. In support of its claim that defendants made certain pre-investment false representations, plaintiff largely relies on the fact that defendants provided it with an October 2009 study, titled "Overview, Advantages and Case Studies," falsely claiming, among other things, that DuCool's systems were 25% more efficient at removing humidity than conventional HVAC units and could be incorporated into existing, conventional systems, with no need to add additional applications. Plaintiff contends these representations were critical in inducing it to invest the initial sum and the second tranche, because they reflected highly appealing key benefits over existing commercial
air conditioning technology. Other deceptions defendants allegedly made include providing false information about successful DuCool product installations in China and India, when in fact there [*3]were rampant failures. Another false representation involved an installation project at an ice skating rink in Florida. Defendants allegedly reported to plaintiff that the project was stopped due to "regulatory" problems when, in actuality, the units had malfunctioned, resulting in a $200,000 loss to the company.
With respect to plaintiff's allegations of defendants' post-investment fraud, plaintiff claims that defendants deceived it by intentionally concealing known problems with DuCool's installations in at least three major sites in the United States and Costa Rica. Other alleged falsehoods pertain to inflated energy cost savings in an April 2011 "study" touting DuCool products' performance and cutting edge technology.
It is unrefuted that plaintiff is a sophisticated investor; in fact a share purchase agreement (SPA) was executed by the parties before the initial acquisition occurred, in which plaintiff made the following express representations:
"Section 4.06 Investment Experience. The Investor [plaintiff] has substantial experience in evaluating and investing in securities of companies similar to [DuCool] and acknowledges that the Investor can protect its own interests. The Investor has such knowledge and experience in financial and business matters so that the Investor is capable of evaluating the merits and risks of its investment in the Company."
The SPA also warns of the "highly speculative nature" of the investment:
"Section 4.07 Speculative Nature of Investment. The Investor understands and acknowledges that [DuCool] has a limited financial and operating history and that an investment in the Company is highly speculative and involves substantial risks. The Investor can bear the economic risk of the Investor's investment and is able, without impairing the Investor's financial condition, to hold the Purchased Shares for an indefinite period of time and to suffer a complete loss of the Investor's investment."
Section 4.08 of the SPA pertains to plaintiff's access to information about the company and ability to seek additional information directly from DuCool's officers:
"Section 4.08 Access to Data. The Investor has had an opportunity to ask questions of, and receive answers from, the officers of the Company concerning the Transaction Documents, the exhibits and schedules attached thereto and the transactions contemplated by the Transaction Documents, as well as the Company's business, operations, properties, technology, prospects and plans, management and financial affairs, which questions were answered to its satisfaction. The Investor believes that it has received all the information the Investor considers necessary or appropriate for deciding whether to purchase the Purchased Shares. The Investor acknowledges that any business plans prepared by the Company have been, and continue to be, subject to change and that any projections included in such business plans or otherwise are necessarily speculative in nature, and it can be expected that some or all of the assumptions underlying the projections will not materialize or will vary significantly from actual results."
Where a cause of action is based in fraud, "the complaint must allege misrepresentation or concealment of a material fact, falsity, scienter on the part of the wrongdoer, justifiable reliance and resulting injury" (see Dembeck v 220 Cent. Park S., LLC, 33 AD3d 491, 492 [1st Dept 2006]). Furthermore, where the plaintiff is a sophisticated party, "if the facts represented are not matters peculiarly within the [defendant's] knowledge, and the [plaintiff] has the means available to [it] of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, [the plaintiff] must make use of those means, or [it] will not be heard to complain that [it] was induced to enter into the transaction by misrepresentations" (ACA Fin. Guar. Corp., 25 NY3d at 1044). Circumstances constituting fraud must be set forth in a complaint in detail (CPLR 3016[b]).
The complaint fails to allege fraud with sufficient specificity as to each individual defendant and the various time frames involved. There are no misrepresentations or omissions attributed directly to defendants Vromen or Rosenblum, each of whom at all times only held a minority interest in DuCool. The only allegations are generally that neither Vromen nor Rosenblum corrected misinformation that the other named defendants provided, despite their "superior knowledge" of the company. The superiority of their knowledge is based solely upon the fact that Vromen and Rosenblum were "insiders" and long time friends of the Forkosh defendants. With respect to the Forkosh defendants, they are alleged to have known of and intentionally misrepresented or concealed information about DuCool's poor performance, motivated by a desire to stay employed by the company and derive hefty bonuses. Actual specific false factual statements are not identified. Nor is specific false concealment identified. Such bundled, bare-boned and conclusory allegations do not establish the basic elements of fraud, namely a "representation of material fact, the falsity of that representation, knowledge by the party who made the representation that it was false when made, justifiable reliance by the plaintiff, and resulting injury" (Pope v Saget, 29 AD3d 437, 441 [1st Dept 2006] lv denied 8 NY3d 803 [207], citing Channel Master Corp. v Aluminum Ltd. Sales, 4 NY2d 403, 406-407 [1958]).
Plaintiff is an experienced and sophisticated investor. It did not plead facts to support the justifiable reliance element of fraud (see ACA Fin. Guar. Corp., 25 NY3d at 1044). Plaintiff had total, unfettered access to every aspect of DuCool's company information both before and after its initial investment, even before it held a controlling interest in DuCool. Although learning through the due diligence conducted by its own technology and business consultants that there were frequent technological problems with DuCool products, some of them "severe," plaintiff proceeded to invest in the company. Thereafter, as the 49% shareholder, plaintiff had the largest percentage ownership of any individual shareholder and it had access to information concerning the operations of the business. There is no factual basis on which to conclude that the alleged fraud involved matters peculiarly within defendants' knowledge, because plaintiff had the means to discover the truth behind any false claims about the condition of the company and whether this was a feasible investment (see ACA Fin. Guar. Corp., 25 NY3d at 1044).
With respect to the scienter element of its claim, although "most likely to be within the sole knowledge of the defendant and least amenable to direct proof," plaintiff is still required to allege facts "from which it is possible to infer defendant[s'] knowledge of the falsity of [their] statements" when they were made (Houbigant, Inc. v Deloitte & Touche, 303 AD2d 92, 98, 99 [1st Dept 2003]). It has not done so. Plaintiff, based upon its own due diligence, concluded that DuCool presented a profitable, albeit speculative, investment opportunity given its development of new technology and registered patents. Although the company may not have performed as plaintiff expected, this does not support a reasonable inference that defendants knew that DuCool would fall short of its business projections. The parties' agreement not only contained plaintiff's express acknowledgment that success was speculative, but also a further acknowledgment that [*4]"any business plans prepared by the Company, have been, and continue to be, subject to change and that any projections included in such business plans or otherwise are necessarily speculative in nature. . ."
Plaintiff argues that the court erred in dismissing its claim based upon defendants' breach of their fiduciary duty to, among other things, impart critical information. This claim was properly dismissed because the relationship alleged does not support a finding of a fiduciary relationship. A fiduciary relationship "exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation" (EBC I, Inc. v Goldman, Sachs & Co. 5 NY3d 11, 19 [2005]). The transactions at their inception were arm's length transactions between sophisticated commercial parties. The SPA identifies plaintiff as an experienced investor. Defendants did not provide plaintiff with financial advice; nor was a relationship of higher trust created at that time (see id. at 19-22). Plaintiff hired its own investment adviser and engineer, seeking their advice about the viability of DuCool's products and whether this was a good investment opportunity. In the absence of a fiduciary relationship between these sophisticated entities, plaintiff cannot maintain a claim for breach of a fiduciary duty, and that claim was properly dismissed. Nor does a breach of fiduciary duty claim exist based upon the parties' status as co-shareholders after the initial investment, because once plaintiff acquired a 49% interest in DuCool, it became the largest single shareholder.
Plaintiff's claim for breach of the implied covenant of good faith and fair dealing was also correctly dismissed. Implicit in every contract is a covenant that in the course of performing the contract, "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract" (Dalton v Educational Testing Serv., 87 NY2d 384, 389 [1995] [internal quotation marks omitted]). The facts alleged describe little more than a breach of contract claim and, in any event, the SPA was not signed by defendants in their individual capacities.
Given our decision dismissing the complaint, we need not reach the other issues raised by the parties.
Accordingly, the order of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered October 29, 2015, which granted defendants' motion to dismiss the complaint should be affirmed, with costs.
All concur.
Order, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered October 29, 2015, affirmed.
Opinion by Gische, J. All concur.
Tom, J.P., Saxe, Richter, Gische, Webber, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MAY 31, 2016
CLERK