## Katzoff v BSP Agency, LLC

### 2025 NY Slip Op 30946(U)

### March 21, 2025

### Supreme Court, New York County

### Docket Number: Index No. 655823/2020

### Judge: Margaret A. Chan

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 49M

----------------------------------------------------------------------X

GERALD KATZOFF, GFB RESTAURANT CORP.,

Plaintiffs,

- v -

BSP AGENCY, LLC,PROVIDENCE DEBT FUND III L.P.,
BENEFIT STREET PARTNERS SMA LM L.P., BENEFIT
STREET PARTNERS SMA-C L.P., PROVIDENCE DEBT
FUND III MASTER (NON-US) FUND L.P., BENEFIT
STREET PARTNERS SMA-C SPV L.P., BRIAN
GALLIGAN, MILLENNIUM I.M. CONSULTING,
LLC,MILLENNIUM I.M. HOLDINGS, LLC,THE BDG
FAMILY PARTNERSHIP, GALLIGAN HOSPITALITY
GROUP, INC.,MILLENNIUM HOSPITALITY GROUP,
L.L.C., IM LLC-II, J.B. IM, LLC, and J.B. IM II, LLC

Defendants.

----------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 655823/2020 |
| **MOTION DATE** | 09/30/2024 |
| **MOTION SEQ. NO.** | MS 004 |

**DECISION + ORDER ON MOTION**

HON. MARGARET A. CHAN:

The following e-filed documents, listed by NYSCEF document number (Motion 004) 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 256, 257, 258, 259, 264

were read on this motion to/for                     **LEAVE TO FILE**

      In this action, plaintiffs Gerald Katzoff and GFB Restaurant Corp. (GFB) allege that various defendants engaged in wrongful conduct designed to improperly seize ownership and control of the Il Mulino brand of restaurants. Plaintiffs originally brought claims against defendants BSP Agency LLC, Providence Debt Fund III LP, Benefit Street Partners SMA LM LP, Benefit Street Partners SMA-C LP, Providence Debt Fund III Master (Non-US) Fund LP, and Benefit Street Partners SMA-C SPV LP (collectively BSP Indemnitors). Plaintiffs later amended their complaint to add claims against defendants Brian Galligan, Millennium IM Consulting LLC, Millennium IM Holdings LLC, The BDG Family Partnership, Galligan Hospitality Group Inc., and Millennium Hospitality Group LLC (collectively, the Galligan defendants, and together with the BSP Indemnitors, the defendants).

655823/2020  KATZOFF, GERALD vs. BSP AGENCY, LLC
Motion No. 004

Page 1 of 17

Plaintiffs now again move to amend their complaint to add seven new causes of action, six new theories of liability for several existing causes of action, and three new defendants—BDG Two Family Limited Partnership (BDG Two), Benefit Street Partners LLC (BSP LLC), and Electronic Processing Services LLC (EPS). Defendants oppose the motion to amend on the grounds that the proposed amendment clearly lack merit and will cause prejudice. For the reasons below, the motion is granted in part and denied in part.

## Background

Plaintiffs originally filed this case October 29, 2020 (NYSCEF # 1). Plaintiffs moved to amend for the first time almost two years later, adding Galligan and several allegations related to him (NYSCEF # 84). That motion was granted on October 27, 2023 (NYSCEF # 120). Plaintiffs now move to amend for a second time, bringing the above new claims and theories of liability and adding three new defendants. (NYSCEF # 258).

Plaintiffs' new allegations and claims can be split into three categories: the Galligan Loan Transaction Claims, the Compeat Access Claims, and Miscellaneous Claims. In total, plaintiffs bring two new theories under Counts 2 and 5, and new causes of action at Counts 6 through 13.

### Galligan Loan Transaction Claims

The Galligan Loan Transaction Claims allege that beginning in at least June 2017 and through January 28, 2020, Galligan—who controlled GFB's accounting books and records—engaged in a complicated scheme that both lined his own coffers and saddled GFB with unnecessary and arguably fake debt that hastened its bankruptcy (NYSCEF # 164, Redlined Proposed Second Amended Complaint, ¶¶ 136, 142, 143).

The scheme had roughly four steps. At step one, Galligan's alter ego, defendant BDG Family, would first send GFB a "loan," usually of around $25,000 or so (*id.* ¶¶ 141, 160-165). At step two, Galligan would cause GFB to immediately transfer an equal amount to one or more of the restaurants serving as collateral to BSP's loans (BSP IM Restaurants) (*id.* ¶¶ 137, 141, 158, 160-162, 164-165).

At step three, Galligan would cause GFB to "repay" the loan in one of two ways: either (i) by causing GFB to pay amounts directly into Galligan's personal bank account, or (ii) by causing GFB's credit card receivables processor, defendant EPS, to directly transfer a portion of those receivables directly to BDG Family without ever passing through GFB (*id.* ¶¶ 138, 141, 160-166). Plaintiffs also allege that many of the EPS payments "are not reflected in GFB's bank statements because Galligan siphoned millions of dollars from GFB's credit card receivables" directly rather than letting them hit the bank first (NYSCEF # 205, Pltfs' Br, at 10).

**655823/2020 KATZOFF, GERALD vs. BSP AGENCY, LLC**
**Motion No. 004**

**Page 2 of 17**

2 of 17

Plaintiffs also allege that Galligan added certain fees and interest to GFB's repayments that resulted in actual interest rates in excess of the criminal usury rate (NYSCEF # 164 ¶¶ 156-165 ["Galligan Loans with Usurious 'Fees'" section]).

Finally, at step four, Galligan would cause the BSP IM Restaurants transfer money back to GFB—not as repayment of GFB's transfer of the loan amount, but as a brand new "debt" that GFB now owed to the BSP IM Restaurants (*id.* ¶¶ 139-141, 150). Plaintiffs allege that BSP forced plaintiffs to consolidate these allegedly fake debts into the GFB Note (*id.* ¶¶ 148-152).

Plaintiffs allege that all the Galligan Loan Transactions were recorded in the so-called "Galligan Loan Ledger," a specific ledger on Compeat Restaurant Management Software (Compeat), the accounting software used by the parties (*id.* ¶¶ 144-145). Plaintiffs allege that these transactions were given false labels like "Loan from BG" and "Fee on BG advance" and other similar phrases in the Galligan Loan Ledger so as to hide the fact that Galligan actually "embezzled millions of dollars from GFB" (*id.* ¶¶ 144-145, 157, 160-165).

Plaintiffs allege that they did not discover the Galligan Loan Ledger or the Galligan Loans until responding to Galligan's discovery requests in this action (NYSCEF # 161, Katzoff Aff ¶ 29). Plaintiffs argue that they could not have discovered Galligan's alleged duplicity any earlier because Galligan previously controlled their books and records (NYSCEF # 257, Pltfs Reply at 4-5). Plaintiffs claim that they "reasonably relied on the misrepresentations in the Galligan Loan Ledger and EPS's spreadsheets for its accounting books and records, tax filings, and issuance of Form 1099s and other tax documents" (NYSCEF # 164 ¶ 311).

EPS allegedly assisted Galligan in these acts by disregarding its regular procedures. Specifically, EPS normally required written agreements signed by GFB from before transferring GFB's credit card receivables to other parties, but did not require such documentation for the Galligan Loan Transactions (*id.* ¶¶ 169-174). As for why—plaintiffs allege that EPS's CEO, Bob Murphy, was Galligan's brother-in-law (*id.* ¶¶ 166-167). Murphy died in 2022, but plaintiffs allege that his widow Theresa Murphy (Galligan's sister) "had (or still ha[s]) a direct or indirect interest in BDG Family" (*id.*).

Plaintiffs bring the following claims related to the Galligan Loan Transactions:

- Two new theories of breach of the GFB Consulting Agreement against Galligan and his alter egos (Count 2) (*id.* at ¶¶ 260 and 261 only):

  o One for breach under § 2(b)(1) for "purporting to make the Galligan Loans and causing GFB to purportedly repay the Galligan Loans at criminally usurious rates," (*id.* ¶ 260); and

[* 3]

    ○   The other for breach of § 5 "by improperly manipulating and making materially false representations in the Galligan Loan Ledger" (*id.* ¶ 261);

- A new theories of breach of fiduciary duty against Galligan and his alter egos for Galligan's "rampant self-dealing in the form of the Galligan Loans" (Count 5) (*id.* at ¶ 280 only);

- A new theory of aiding and abetting Galligan's breach of fiduciary duties against BSP for assisting with the Galligan Loans and in convincing Galligan to breach his fiduciary duties (Count 6) (*id.* at ¶ 288 only);

- A new claim against EPS for aiding and abetting Galligan's breach of fiduciary duty by siphoning credit card receivables to him (Count 7);

- Two claims for "embezzlement," one against BSP, Galligan, BDG Family, EPS, and the other against just BSP (Counts 8 & 10); and finally

- A claim for fraud against BSP, Galligan, BDG Family, and EPS for falsely recording various transactions as the Galligan Loans in the Galligan Loan Ledger and EPS spreadsheets (Count 9).

*Compeat Access Claims*

Plaintiffs also claims that defendants used the "username and password of a former bookkeeper for Il Mulino, Cindy MacMillan," to access/steal plaintiffs' accounting books and records after this litigation began.

Plaintiffs allege defendants use the Compeat Restaurant Management Software (Compeat) to manage their accounting books and records (*id.* ¶ 144). Plaintiffs assert that prior to the July 2020 bankruptcy, "Galligan managed the day-to-day operations of all the Il Mulino restaurants, including [] GFB" (*id.* ¶ 230 [emphasis removed]). Plaintiffs claim that on February 11, 2020, Galligan gave MacMillan "full access for GFB in Compeat as [she] will be handling the financial reporting for awhile" (*id.* ¶ 231; *see also* NYSCEF # 235, Emails between MacMillan and Roger Foster 2/11/2020). In the interim plaintiffs started this action on October 29, 2020 (NYSCEF # 164 ¶ 233; *see also* NYSCEF # 1, Summons and Complaint). Plaintiffs allege that following the December 24, 2020 bankruptcy sale in which BSP acquired the BSP IM Restaurants, Galligan and MacMillan "became employees of BSP and no longer worked for GFB" (NYSCEF # 164 ¶ 234). Plaintiffs assert that MacMillan therefore did not have authorization to access plaintiffs' records on Compeat following that sale.

[* 4]

Nevertheless, plaintiffs claim that either Galligan directed MacMillan to access plaintiffs' accounting records or defendants themselves simply used her credentials to so access, and did so nearly a hundred times during the course of this litigation (*id.* ¶¶ 235, 239-242, 244-245). Plaintiffs allege that on November 1, 2021, BSP used that access to delete data from plaintiffs' books and records (*id.* ¶ 236). In addition, many other occasions, defendants copied/stole plaintiffs' data in order to "manufacture their Counterclaims" and otherwise "get a 'sneak peek' into GFB's books and records" for litigation purposes (*id.* ¶¶ 248, 355). Plaintiffs allege that defendants' unauthorized access "caused loss to GFB during a one-year period or more of at least $5,000" because:

> "GFB has expended considerable resources far in excess of $5,000 in responding to BSP and Galligan's unauthorized access into GFB's protected computer system and conducting a forensic review to assess the scope of their unauthorized access"

(*id.* ¶ 356). Plaintiffs argue that defendants only ceased access after plaintiffs sent a cease-and-desist letter (*id.* ¶ 246).

Defendants respond that following the bankruptcy sale, they assumed complete control of Compeat and were paying the Compeat bills (NYSCEF # 258, Defs Response, at 16). Defendants argue that plaintiffs were using Compeat at defendants' pleasure only, and that therefore defendants were not making unauthorized access into plaintiffs' records (*id.*). Defendants further argue that plaintiffs never revoked MacMillan's access and therefore she was not doing anything unauthorized (*id.* at 17-18).

Plaintiffs reply that MacMillan worked for BSP, not plaintiffs, and so after the bankruptcy sale she was no longer authorized (NYSCEF # 257 at 11-12). Plaintiffs also allege that they had negotiated with BSP to share the costs of Compeat but that defendants had never sent plaintiffs a bill (*id.* at 10; *see also* NYSCEF # 239, Katzoff Aff II, ¶¶ 35-36, 42-44). Plaintiffs further argue that part of the deal had been that neither side would access each other's documents in Compeat (NYSCEF # 257 at 10; *see also* NYSCEF # 239 ¶ 35; NYSCEF # 234, Foster Aff, ¶ 15). Plaintiffs argue that BSP's failure to send the bills should not affect their rights against BSP's intrusion (NYSCEF # 257 at 10-11).

Plaintiffs bring the following claims related to Compeat:

- A new theory of breach of fiduciary duty against Galligan and his alter egos for the unauthorized access into GFB's Compeat records during litigation (Count 5) (*id.* at ¶ 279 only); and

655823/2020   KATZOFF, GERALD vs. BSP AGENCY, LLC
Motion No.  004

Page 5 of 17

[* 5]

5 of 17

- A claim for violation of the Computer Fraud Abuse Act, 18 USC § 1030 et seq., against BSP and Galligan for unauthorized access of plaintiffs' records in Compeat (Count 12).

*Miscellaneous Claims*

Plaintiffs' claims under the Miscellaneous Claims category relate to two other claims but do not fit into either of the above categories. First, plaintiffs allege that from 2015 to October 2020, Galligan caused GFB to pay BDG Two a $4,807.69 fee per week for consulting services allegedly provided by Millennium Consulting under the GFB Consulting Agreement (NYSCEF # 164 ¶¶ 326, 331). Plaintiffs allege that the payments were unauthorized because (a) Millennium Consulting had earlier waived all fees, (b) the parties never amended the agreement to re-allow fees, and (c) BDG Two was not a party to the agreement (*id.* ¶¶ 327-332). Plaintiffs bring a conversion claim against BDG Two and Galligan on these allegations (Count 11).

Finally, plaintiffs allege that per a series of contracts both before and after the bankruptcy sale, defendants agreed to indemnify Katzoff for "any losses incurred . . . in connection with the management of the Restaurants" in relation to certain contracts and notes (*id.* ¶¶ 361-362). Plaintiffs allege that Katzoff personally repaid a note from Firsttrust Bank covered by the indemnification agreement, and therefore is owed indemnity (*id.* ¶¶ 369-372). Plaintiffs bring an indemnification claim on these allegations (Count 13).

### Legal Standards

"Whether to grant an amendment is committed to the discretion of the court" (*Ferrer v Go New York Tours Inc.*, 221 AD3d 499, 500 [1st Dept 2023]). Leave to amend should be "freely given" (CPLR 3025 [b]), "so long as there is no surprise or prejudice resulting from the delay to the opposing party and the proposed amendment is not palpably insufficient or patently devoid of merit" (*Ferrer*, 221 AD3d at 500). At the same time, "[t]he legal sufficiency or merits of a proposed amendment to a pleading will not be examined unless the insufficiency or lack of merit is clear and free from doubt" (*Ferrer*, 221 AD3d at 500). The kind of prejudice or surprise from delay must be "some special right lost in the interim, some change of position or some significant trouble or expense that could have been avoided had the original pleading contained what the amended one wants to add" (*A.J. Pegno Const. Corp. (AJ Pegno) v City of New York*, 95 AD2d 655, 656 [1st Dept 1983] [internal citation omitted]). "The burden of establishing prejudice is on the party opposing the amendment" (*Kimso Apartments, LLC v Gandhi*, 24 NY3d 403, 411 [2014]). "A party opposing leave to amend 'must overcome a heavy presumption of

655823/2020  KATZOFF, GERALD vs. BSP AGENCY, LLC
Motion No. 004

Page 6 of 17

6 of 17

validity in favor of permitting amendment'" (*O'Halloran v Metro. Transp. Auth.*, 154 AD3d 83, 86 [1st Dept 2017]).

## Discussion

Defendants oppose the motion to amend on several grounds. First, they argue that plaintiffs failed to explain their undue delayed in adding most of these claims, causing defendants prejudice (NYSCEF # 258 at 5-7). Defendants also allege they have been prejudiced by the loss of several sources of discovery (*id.* at 7-8). Defendants next argue that the claims fail on the merits. They argue that some, including conversion and all of the Loan Transaction Claims, are barred by the statute of limitations because they allege conduct going back as far as 2015 and ending in 2020 (*id.* at 14-15). They argue that the remaining claims all fail for failure to state all essential elements (*id.*).

## I.    Prejudice or Delay

Much like last time, the court once again rejects defendants' arguments that leave to amend should be denied based on prejudice or lack of reasonable excuse for delay. First, there was no extended delay here, and so plaintiffs do not need to explain any delay. Defendants point out that this case has been pending for four years, much longer than several cases they cite in support (NYSCEF # 258 at 5 [collecting cases]). While defendants are correct to point out the age of this case, none of the cases they cite are solely focused on the amount of time since filing. Instead, each one is focused on the amount of time in conjunction with the status of discovery.

For instance, the First Department rejected amendment in *B.B.C.F.D., S.A. v Bank Julius Baer & Co. Ltd.* because doing so would have "effectively resurrect[ed] two cases that, after many years of litigation, [were] close to being resolved" (*see* 62 AD3d 425, 426 [1st Dept 2009]). In *Oil Heat Inst. of Long Is. Ins. Tr. v RMTS Assoc., LLC*, the First Department similarly rejected an amendment made after depositions were conducted (*see* 4 AD3d 290, 292, 294-295 [1st Dept 2004] [repeatedly referencing depositions and lateness]). And defendants' last case, *Perez v New York City Health and Hosps. Corp.*, involved a *ten year* filing delay that came *after* depositions and *after* "discovery on the originals claims had been closed" (*see* 226 AD3d 602, 603 [1st Dept 2024]).

Here, there is no undue delay because party depositions have not taken place, the note of issue has not been filed, and no dispositive motions have been decided. Defendants respond that plaintiffs "should not be permitted to leverage the status of discovery" because plaintiffs' prior amendment and discovery obstruction caused a delay in discovery (NYSCEF # 258 at 8). Notably, it is not clear that plaintiff was

655823/2020  KATZOFF, GERALD vs. BSP AGENCY, LLC                    Page 7 of 17
Motion No. 004

7 of 17

the sole perpetrator of any discovery delays. Therefore, no reasonable excuse for delay is necessary here.

Defendants' other bases for prejudice are unavailing. Defendants argue that prejudice can arise "where there is a significant expansion of the claims" (NYSCEF # 258 at 7, citing *Khan v Garg*, 2023 WL 188950, at *3 (Sup Ct, NY County, Jan. 16, 2023), and *Weston v Smith*, 21 Misc 3d 1107(A) (Sup Ct, Jefferson County 2006), *affd*, 38 AD3d 1224 (4th Dept 2007). However, leave to amend is freely granted "even if the amendment substantially alters the theory of recovery" (*Kimso*, 24 NY3d at 411).

Moreover, neither of defendants' cited cases is on point. *Khan* did not merely involve an expansion of the claims but also discovery that had been completed over two years earlier (*Khan*, 2023 WL 188950, at *3 ["Discovery has been complete since October 2020"]). *Khan* also does not cite any First Department case law for the proposition that a "significant expansion of the claims" can result in prejudice. *Weston* similarly involved an amendment after significant discovery "including depositions and disclosure" such that the new allegations would "essentially start the action over again" (*Weston*, 21 Misc 3d 1107[A]). The expansion of claims is not, on its own, enough given the early stages of discovery.

Defendants next argue that many sources of discovery have already been lost. Each of these arguments fails. Defendants claim that "plaintiffs' new claims rest on transactions as early as 2015" but that plaintiffs also allege bank retention policies are only as short as seven years (NYSCEF # 258 at 7-8, citing NYSCEF # 147, Emails between counsel [plaintiffs' counsel writes that bank retention policies "presumably" go back "7 years"]). Defendants also argue that the general passage of time creates prejudice by impacting witness recollections "which will be crucial for Plaintiffs' new claims" (*id.* at 8).

Both arguments must fail because defendants do not allege any specific records have been destroyed or memories that have deteriorated (*see Curiale v Stephen Weicholz & Co., Inc.*, 192 AD2d 339 [1st Dept 1993] ["(d)efendants offer only conclusory statements as to alleged irretrievability of documents and unavailability of witnesses"]). Moreover, it is unclear if bank records will even be at issue given plaintiffs' allegations that many of the Loan Transaction payments "are not reflected in GFB's bank statements because Galligan siphoned millions of dollars from GB's credit card receivables" (NYSCEF # 205 at 10 [emphasis removed]).

Defendants finally argue that they will be unable to depose Bob Murphy, the CEO of EPS who died in 2022 and who is repeatedly referenced in the Galligan Loan Transaction Claims (*see* NYSCEF # 258 at 8). While true, there are other sources for the same information. Plaintiffs alleged that Murphy was Galligan's

655823/2020  KATZOFF, GERALD vs. BSP AGENCY, LLC
Motion No. 004

Page 8 of 17

[* 8]

8 of 17

brother-in-law and that the Loan Transaction scheme was a result of that relationship (NYSCEF # 164 ¶¶ 166-167). Plaintiffs further allege that Theresa Murphy, Galligan's sister and Bob's widow, "had (or still have) a direct or indirect interest in BDG Family" (*id.*). Defendants could therefore depose Galligan or his sister for the same information, or indeed some of EPS's employees. Additionally, as shown below, the EPS claims fail on the merits, making Bob's availability a non-issue.

Given that there is no prejudice from the delay nor from any other source, the court will move on to determine whether the legal insufficiency of the claims is "clear and free from doubt" (*Ferrer*, 221 AD3d at 500).

## II. Merits

### A. Galligan Loan Transaction Claims

#### 1. Embezzlement (Counts 8 & 10)

The embezzlement causes of action will be dismissed as there is no civil cause of action for embezzlement under New York law. As defendants point out, criminal offenses defined in the penal law do not give rise to a civil cause of action (*Crandall v Bernard, Overton & Russell*, 133 AD2d 878, 879 [3d Dept 1987]; *see also Minnelli v Soumayah*, 41 AD3d 388, 389 [1st Dept 2007] [dismissing extortion claim because extortion was defined under Penal Law 155.05]). "Embezzlement" is a criminal offense under Penal Law § 155.05(2), and therefore it cannot be raised as a cause of action here (*see Minelli*, 41 AD3d at 389 [dismissing an extortion claim due to same penal statute]).

Plaintiffs nevertheless argues that the First Department specifically recognizes embezzlement as a cause of action (NYSCEF # 257 at 8). Plaintiffs cite as support a First Department case from 1914 and a 2007 case from Nassau County (*id.*, citing *Spiegel v Levine*, 161 AD 764, 768 [1st Dept 1914], and *Steinfeld v Twillary*, 2007 WL 4101661, at *1 [Sup Ct, Nassau County 2007]). However, plaintiffs do not cite any modern First Department cases—as in cases decided after the 1967 adoption of the New York Penal Law—holding that embezzlement continues to be recognized as a civil cause of action. The embezzlement claims are dismissed.

#### 2. Fraud (Count 9)

The elements of fraudulent misrepresentation or omission are: "(1) a misrepresentation or a material omission of fact which was false and known to be false by the defendants, (2) made for the purpose of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation or

655823/2020   KATZOFF, GERALD vs. BSP AGENCY, LLC
Motion No. 004

Page 9 of 17

[* 9]

material omission, (4) and injury" (*Globalx, Inc. v Hogwarts Capital, LLC*, 226 AD3d 535, 536 [1st Dept 2024] [internal citation omitted]).

The elements of fraudulent concealment are: (i) concealment of a material fact which (ii) defendant was duty-bound to disclose, (iii) scienter, (iv) justifiable reliance, and (v) injury (*Mitschele v Schultz*, 36 AD3d 249, 254-255 [1st Dept 2006]). Both types of fraud must be pleaded with particularity (CPLR 3016 [b]).

Here, plaintiffs' claim fails on the justifiable reliance prongs. Plaintiffs allege that Galligan defrauded them by misrepresenting the various self-dealing transactions as "loans" in the Galligan Loan Ledger and EPS spreadsheets. Plaintiffs allege they reasonably relied on these misrepresentations "for [GFB's] accounting books and records, tax filings, and issuance of Form 1099s and other tax documents" (NYSCEF # 164 ¶ 311). But as defendants point out, plaintiffs admit that they were unaware of the Galligan Loan Ledger or its related entries until after this litigation began, and so they therefore could not have relied on it.

That said, there may be a fraud claim buried in these allegations relating to the BSP IM Restaurants and the GFB Note, but plaintiffs have not stated it here. The fraud claim is dismissed.

### 3. *Fiduciary Duty and Aiding and Abetting Fiduciary Duty Claims (Counts 5 [¶ 280], 6, 7)*

Defendants argue that the new theories and causes of action relating to Galligan's breach of fiduciary duty and EPS and the BSP Indemnitors' aiding and abetting breach of fiduciary duty are untimely because all relevant payments fall outside the limitations period.

A cause of action for breach of fiduciary duty is subject to a three-year statute of limitations when "the remedy sought is purely monetary in nature" (*IDT Corp. v Morgan Stanley Dean Witter & Co.*, 12 NY3d 132, 139 [2009]; *Romanoff v Romanoff*, 148 AD3d 614, 616 [1st Dept 2017]). Additionally, where a claim alleges "a series of unauthorized transfers, the continuing wrong doctrine toll[s] the running of the statute of limitations until the last such transfer was made" (*Marcal Fin. SA v Middlegate Sec. Ltd.*, 203 AD3d 467, 468 [1st Dept 2022]).

In this case, plaintiffs' Galligan Loan fiduciary duty claim alleges that beginning in at least June 2017 until January 28, 2020, Galligan and his alter egos breached their fiduciary duty through "rampant self-dealing in the form of the Galligan Loans," a complicated scheme in which (a) Galligan's alter ego BDG Family would send GFB a "loan;" (b) Galligan would cause GFB to immediately transfer the balance of that loan to one of the BSP Restaurants; (c) Galligan would then either (i) cause GFB to almost immediately repay the loan directly into Galligan's personal bank account and/or (ii) cause EPS to transfer a portion of

655823/2020   KATZOFF, GERALD vs. BSP AGENCY, LLC                    Page 10 of 17
Motion No. 004

10 of 17

GFB's credit card receivables to BDG Family almost daily as interest; and (d) Galligan would then record these payments as "loans" and loan repayments in GFB's books (NYSCEF # 164 ¶¶ 138, 141, 144, 145, 156-180, 280). Plaintiffs further allege that EPS and the BSP Indemnitors aided and abetted these breaches—EPS by transferring the aforementioned credit card receivables, and the BSP indemnitors by having the BSP Restaurants transfer money back to GFB as a "loan" rather than as repayment for the money GFB transferred at step (b) above (*id.* ¶¶ 141, 166-180, 288, 291-297). As a result of these alleged breaches, plaintiffs seek compensatory damages, punitive damages, and "disgorgement of ill-gotten gains from the Galligan Loans" (*id.* ¶¶ 283, 290, 297).[1]

Given that plaintiffs allege a series of unauthorized transfers, the statute of limitations on plaintiffs' Galligan Loan fiduciary duty claims began to run on January 28, 2020 (the date of the last alleged payment) and expired January 28, 2023, over a year before this amendment was filed. The claims are therefore barred by the statute of limitations.

Plaintiffs nevertheless maintain that their fiduciary duty claims fall within CPLR 213(8)'s two-year fraud discovery rule because the claims are based on Galligan's fraud, which plaintiffs did not discover until responding to Galligan's discovery requests in 2022 or 2023 (*see* NYSCEF # 257 at 7). However, "to conclude that [plaintiffs'] breach of fiduciary duty cause of action is a sufficiently pleaded fraud action, [the court] would have to discern a claim that [plaintiffs] acted in 'justifiable reliance' on [defendants'] alleged misrepresentation and material omission" (*see IDT Corp.*, 12 NY3d at 140). As explained above, plaintiffs did not rely on Galligan's misrepresentation that any payments from Galligan/BDG Family were "loans" and therefore there is no fraud alleged. Moreover, plaintiffs' claims against Galligan sound in conversion, not fraud. Thus, the three-year limitations period of CPLR 214(4) applies to the fiduciary duty claims. The claims are untimely.

Because the breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims are denied as untimely, the court does not reach defendants' other arguments on this point.

### 4. *Breach of Contract (Count 2, ¶¶ 260-261)*

Plaintiffs bring two new theories of breach under their first cause of action. First, plaintiffs allege that Millennium Consulting breached § 2(B)(1) of the GFB Consulting Agreement by "purporting to make the Galligan Loans and causing GFB repay the Galligan Loans at criminally usurious rates" without Katzoff's sign-off (NYSCEF # 164 ¶ 260). Second, Millennium Consulting breached § 5 of the GFB

---

[1] For whatever reason, plaintiffs do not argue that their request for disgorgement—an equitable remedy—subjects these claims to the six-year statute of limitations.

Consulting Agreement by "improperly manipulating and making materially false representations in the Galligan Loan Ledger" (*id.* ¶ 261).

Both theories survive as defendants fail to show that the lack of merit is "clear and free from doubt" (*see Ferrer,* 221 AD3d at 500), Regarding § 2(B)(1), while defendants have provided an agreement signed by Katzoff purporting to approve at least one of the loans, plaintiffs argue that document is a forgery. There is no need to decide the merits of plaintiffs' challenge now, because even assuming that this particular loan was legitimate, plaintiffs allege there were multiple loans over a seven-year period. Defendants have not provided evidence rebutting them all.

As for § 5, defendants argue that there are no false representations alleged because plaintiffs do not allege that the payments in the Galligan Loan Ledger are inaccurate. Defendants are incorrect. As plaintiffs point out in their arguments regarding fraud, plaintiffs allege the entire Galligan Loan Ledger is a misrepresentation because there were no loans at all, and therefore recording these transactions as "loans" was fraudulent. Defendants have failed to rebut this.

### B. Compeat Access Claims

Plaintiff's remaining new claims relate to the unauthorized access to plaintiffs' databases

#### 1. CFAA Claim (Count 12)

Plaintiffs' newly added twelfth cause of action asserts a violation of the Computer Fraud and Abuse Act (18 USC § 1030, et seq.) (CFAA) against BSP and Galligan on behalf of GFB. Plaintiffs allege that after BSP took over the BSP IM Restaurants, Galligan either instructed MacMillan or used MacMillan's credentials to access plaintiffs' accounting records on Compeat nearly a hundred times (NYSCEF # 164 ¶¶ 235, 239-242, 244-245). Plaintiffs allege that defendants' unauthorized access "caused loss to GFB during a one-year period or more of at least $5,000" because GFB spent money "responding" to the unauthorized access and "conduct[ed] a forensic review to assess the scope of the[] unauthorized access" (*id.* ¶ 356). Defendants challenge plaintiffs' allegations on numerous grounds, but the one that succeeds here is that plaintiffs inadequately pled "loss."

The CFAA is primarily a federal criminal statute that "subjects to criminal liability anyone who 'intentionally accesses a computer without authorization or exceeds authorized access,'" among other things (*Van Buren v United States,* 593 US 374, 379 [2021], quoting 18 USC § 1030[a][2]). There are other bases of liability under the CFAA, and indeed one of defendants' arguments is that plaintiffs fail to allege the specific subsection and basis for liability (NYSCEF # 258 at 16). No matter what subsection plaintiffs rely on, however, the CFAA gives them a private right of action so long as the violation involves one of the following:

655823/2020  KATZOFF, GERALD vs. BSP AGENCY, LLC
Motion No. 004

Page 12 of 17

"**(I)** loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;

**(II)** the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;

**(III)** physical injury to any person;

**(IV)** a threat to public health or safety;

**(V)** damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security"

(§ 1030[c][4][A][i]; *see also* § 1030 [g] [referring to this list]). By process of elimination, plaintiffs' allegations could only possibly be alleging $5,000 of "loss" under (I). Thus, if plaintiffs did not adequately plead a "loss" of $5000 or more, their CFAA claim must be dismissed no matter what.

"Loss" is defined in the statute as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service" (§ 1030 [e] [11]). The United States Supreme Court clarified in 2021 that loss "relates to costs caused by harm to computer data, programs, systems, or information services" (*Van Buren*, 593 US at 391). "Loss" does not cover any losses relating to the actual "misuse" of misappropriated information (*id.*).

Plaintiffs fail to plead loss here. Plaintiffs claim that they adequately plead loss because they allege (a) they spent more than $5,000 in "*responding* to BSP and Galligan's unauthorized access" including the "forensic review to assess the scope of their unauthorized access;" and (b) defendants deleted data on November 1, 2021 (NYSCEF # 257 at 13, citing NYSCEF # 164 ¶¶ 356 [emphasis added]). However, federal courts in this state require plaintiffs to allege "how the 'costs of *responding* to an offense' are linked 'to situations involving damage to or impairment of the protected computer'" when pleading loss (*William Gottlieb Mgt. Co., LLC v Carlin*, 20 CIV. 08907 (VM), 2024 WL 1311854, at *3 [SDNY Mar. 26, 2024] [emphasis added]). Merely pleading that one incurred costs in responding, as plaintiffs did here, is insufficient.

655823/2020  KATZOFF, GERALD vs. BSP AGENCY, LLC
Motion No. 004

Page 13 of 17

Nor is it sufficient to plead that plaintiffs conducted a forensic review. While "loss" can include the costs of investigations, federal courts in this state have excluded costs of "an investigation—particularly one led by counsel—into the extent of any *misappropriation* of confidential information" because such investigations are "not done to identify, investigate, or remedy any covered damage" (*Better Holdco, Inc. v Beeline Loans, Inc.*, 20-CV-8686 (JPC), 2021 WL 3173736, at *4 [SDNY July 26, 2021] [emphasis in original]; *see also Van Buren*, 593 US at 391 [loss "relates to costs caused by harm to computer data, programs, systems, or information services"]). Plaintiffs plead they engaged in a "forensic review to assess the scope of [defendants'] unauthorized access"—not to investigate harm to the computer system, but merely to determine what defendants accessed. Most of plaintiffs' allegations relate to how defendants may have used (i.e., misappropriated) information for use in this litigation, strongly implying that the forensic review was run by counsel and geared towards investigating "the extent of any *misappropriation* of confidential information" (*Better Holdco*, 2021 WL 3173736, at *4 [emphasis in original]). The forensic review is not sufficient.

Finally, plaintiffs' allegation that defendants deleted documents is similarly insufficient. "Even editing or deleting a file does not in every case amount to 'impairment to the integrity' of data, a program, a system, or information" (*Gottlieb Mgt. Co., LLC v Carlin*, 20 CIV. 08907 (VM), 2024 WL 1311854, at *4, quoting § 1030[e][8]). Plaintiffs here make no attempt to explain "the significance of the documents that were allegedly edited or deleted, or how [plaintiffs were] impacted in any way" (*see id.*). They have therefore failed to allege a claim under the CFAA.

Plaintiffs only response is that similar allegations have previously been held sufficient by this court, citing *U.S. Tsubaki Holdings, Inc. v Estes* (*see* NYSCEF # 257 at 13, citing *U.S. Tsubaki Holdings, Inc. v Estes*, 2020 N.Y. Slip Op. 32694[U], 51 [Sup Ct, New York County 2020], *revd on other grounds*, 2021 NY Slip Op 03273 [1st Dept 2021]). But *Tsubaki* was decided prior to the US Supreme Court's 2021 decision clarifying the scope of the statute and is therefore of at most limited applicability here (*see Van Buren*, 593 US at 391).

Nothing in this opinion should be read to endorse defendants' alleged actions in accessing a litigation adversaries' internal records. Indeed, these allegations, if true, are sanctionable. But these allegations do not make out a violation of the CFAA, and therefore this cause of action is denied.

### 2. *Fiduciary Duty Claims (Count 5 ¶ 279)*

Defendants fail to rebut the fiduciary duty claim that Galligan ordered MacMillan to access plaintiffs' books and records through Compeat and/or used MacMillan's credentials. Defendants' main argument is that MacMillan was an authorized user and therefore by definition did not make any unauthorized access

655823/2020 KATZOFF, GERALD vs. BSP AGENCY, LLC
Motion No. 004

Page 14 of 17

(NYSCEF # 258 at 17, 19). Defendants' only evidence is an email from just prior to the bankruptcy sale showing MacMillan was given full access (*see* NYSCEF # 174, Letter and Exhibit, at *6; *see also* NYSCEF # 235). Plaintiffs submitted reply evidence indicating the parties made a deal that no one working for BSP would access plaintiffs' side of Compeat (NYSCEF # 234 ¶ 15). Thus, MacMillan's continued authorization is a question of fact.

Defendants also argue that "Plaintiffs' allegation that Galligan made or directed this access is also completely unsubstantiated" (NYSCEF # 258 at 19). Substantiation is not the standard on a motion to amend or dismiss, and so defendants at most raise an issue of fact. The Compeat fiduciary duty claims survive.

### C. Miscellaneous Claims

#### 1. Conversion (Count 11)

Plaintiffs' conversion claim alleges that from 2015 to October 2020, Galligan caused GFB to pay BDG Two a $4,807.69 fee per week for consulting services allegedly provided by Millennium Consulting under the GFB Consulting Agreement. Plaintiffs allege that the payments were unauthorized because (a) Millennium Consulting had earlier waived all fees, (b) the parties never amended the agreement to re-allow fees, and (c) BDG Two was not a party to the agreement and so should never have been paid. Defendants respond that the claim is barred by the three-year statute of limitations.

A cause of action for conversion is subject to a three-year statute of limitations (*Maya NY, LLC v Hagler*, 106 AD3d 583, 585 [1st Dept 2013]). The cause of action accrues on the date the conversion takes place, not the date it was discovered or in the exercise of diligence could have been discovered (*id.*, citing *Vigilant Ins. Co. of Am. v Hous. Auth. of City of El Paso, Tex.*, 87 NY2d 36, 44 [1995]).

Here, according to the exhibits attached to the PSAC, plaintiffs last paid BDG Two in October 2020, *i.e.*, four years before this amendment was filed (*see* NYSCEF # 163, Proposed Second Amended Complaint and Exhibits, at *151 [Chart of Payments to BDG Two]). Thus, the conversion claim is untimely.

Plaintiffs argue that the claim is nevertheless timely because the statute of limitations is actually six years given that "the claimed damage is to . . . pecuniary interests and . . . had its genesis in the contractual relationship" (NYSCEF # 257 at 14, quoting *Baratta v Kozlowski*, 94 AD2d 454, 455 [2d Dept 1983]). Plaintiffs are incorrect; the statute of limitations remains three years. *Baratta* is distinguishable because the case explored the boundary between conversion and breach of bailment contract, ultimately applying the six-year statute of limitations to the breach claim

655823/2020 KATZOFF, GERALD vs. BSP AGENCY, LLC Page 15 of 17
Motion No. 004

15 of 17

only (*see also Lyman v J.P. Morgan Chase & Co.*, 200 AD3d 525 [1st Dept 2021] [dismissing conversion but not breach of bailment contract for statute of limitations purposes]). Here, plaintiffs do not bring a claim for breach of bailment contract, and so the six-year statute of limitations does not apply.

Plaintiffs' final argument is that even if the three-year limitation applies, the claim is nonetheless timely because it relates back to Galligan's counterclaims (NYSCEF # 257 at 14). This argument is unpersuasive. The relation back doctrine is codified in CPLR 203. Paragraph (d) of that section allows counterclaims to relate back to claims in plaintiff's complaint, while paragraph (f) allows an "amended pleading" to relate back to the "original pleading" (*see* CPLR 203 [d], [f]). Nothing in CPLR 203 allows a claim in an amended complaint to relate back to a counterclaim, and so relation back is not permitted in this instance.

Plaintiffs' cited cases do not change this outcome. *Beach v Touradji Capital Mgt., LP* involved counterclaims that related back to the original complaint per CPLR 302(d) (142 AD3d 442, 444 [1st Dept 2016]). *Debevoise & Plimpton LLP v Candlewood Timber Group LLC* involved a counterclaim that was barred by the statute of limitations, with only one part of it surviving due to the parties' agreement (102 AD3d 571, 572 [1st Dept 2013]). Finally, while the court in *Patmos Fifth Real Estate v Mazl Building* did write that "[t]he claim related back to the original counterclaims," the "claim" in question was defendants' amended counterclaim, not plaintiffs' amended claim (*see* 189 AD3d 632, 632, 633 [1st Dept 2020] ["unanimously modified, on the law, to grant defendants' motion . . . to amend"]).

The conversion claim is therefore dismissed as time-barred.

### 2. Indemnification Claim Against BSP Indemnitors (Count 13)

Finally, defendants fail to show that the indemnification allegations clearly lack merit. Defendants rely exclusively on out-of-jurisdiction cases to argue that there is a difference between liability and loss contracts and that the contract at issue is a contract for loss only. Defendants' only binding case has nothing to do with the type of out-of-pocket losses at issue here but is instead about indemnification of attorneys fees (*see Hooper Assoc., Ltd. v AGS Computers, Inc.*, 74 NY2d 487, 492 [1989]). Thus, defendants have not shown this claim to be clearly devoid of merit. The Indemnification Claim survives.

### Conclusion

In view of the above, it is hereby

ORDERED that plaintiffs' motion for leave to amend is granted in part as follows: leave to amend is granted as to the new theories of breach of contract

655823/2020 KATZOFF, GERALD vs. BSP AGENCY, LLC Page 16 of 17
Motion No. 004

16 of 17

[* 16]

(Count 2), the fiduciary duty claims related to defendants' access to Compeat (Count 5, paragraph 279 only), and the indemnification claim (Count 13); and it is further

ORDERED that leave to amend the complaint is denied with respect to the fiduciary duty claims related to the Galligan Loan Transactions (Count 5, paragraph 280 only) and the entirety of the proposed Counts 6, 7, 8, 9, 10, 11, and 12, and those causes of action are stricken; and it is further

ORDERED that plaintiffs shall e-file their Second Amended Complaint on NYSCEF striking paragraph 280 and the entirety of Counts 6, 7, 8, 9, 10, 11, and 12, and also striking Electronic Processing Services LLC from the caption; and it is further

ORDERED that defendants shall answer or otherwise respond to the Second Amended Complaint within 20 days from the date of service; and it is further

ORDERED that counsel are directed to appear for a status conference via Microsoft Teams on April 16, 2025 at 11:30 A.M.

| 3/21/2025 | | | | |
|-----------|---|---|---|---|
| **DATE** | | | MARGARET A. CHAN, J.S.C. | |

| CHECK ONE: | ☐ CASE DISPOSED | | ☒ NON-FINAL DISPOSITION | |
|------------|-----------------|---|-------------------------|---|
| | ☐ GRANTED | ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

655823/2020 KATZOFF, GERALD vs. BSP AGENCY, LLC Page 17 of 17
Motion No. 004

17 of 17